# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **Pierre Investments, Inc.,** *et al.* | ) | Case No. 1:22-cv-155 |
| | ) | |
| Plaintiffs, | ) | JUDGE TIMOTHY S. BLACK |
| | ) | |
| vs. | ) | MAGISTRATE JUDGE STEPHANIE K. BOWMAN |
| | ) | |
| **Fifth Third Bancorp,** *et al.* | ) | **DEFENDANTS FIFTH THIRD** |
| | ) | **BANCORP, FIFTH THIRD BANK,** |
| Defendants. | ) | **NATIONAL ASSOCIATION, BRIAN** |
| | ) | **REID, JULIE KRISTENAK, AND BLAKE** |
| | ) | **WILLIAMS' MOTION TO DISMISS** |
| | ) | **PLAINTIFFS' AMENDED COMPLAINT** |

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants Fifth Third Bancorp, Fifth Third Bank, National Association, Brian Reid, Julie Kristenak, and Blake Williams (collectively, the "Fifth Third Defendants") move to dismiss Plaintiffs' Amended Complaint. (Doc. 13).[1] Plaintiffs' Amended Complaint does not state a claim on which relief can be granted against the Fifth Third Defendants and it should be dismissed. A Memorandum in Support Follows.

                                                          Respectfully submitted,

                                                          */s/ Andrew B. Cassady*
                                                          Harry W. Cappel (0066513)
                                                          Andrew B. Cassady (0092413)
                                                          DINSMORE & SHOHL LLP
                                                          255 East Fifth Street, Suite 1900
                                                          Cincinnati, Ohio 45202
                                                         P: (513) 977-8200
                                                         harry.cappel@dinsmore.com
                                                         andrew.cassady@dinsmore.com

                                                         *Counsel for the Fifth Third Defendants*

---

[1] Plaintiffs filed three versions of the Amended Complaint (Docs. 7, 11, 13). The transferring court found Doc. 13 to be the operative one. (*See* Doc. 15, PageID 410). Plaintiffs also sued two non-existing entities in "Fifth Third Bank, an Ohio banking corporation" and "Fifth Third Bank, Northwestern Ohio, NA Toledo." Although not actual entities, out of an abundance of caution they are included as part of the Fifth Third Defendants' Motion to Dismiss.

**MEMORANDUM IN SUPPORT**

**I.  INTRODUCTION**

The Fifth Third Defendants are being sued because one of Fifth Third Bank, National Association's ("Fifth Third") customers, a non-party to this case, allegedly breached a contract with Plaintiff Pierre Investments, Inc. ("Pierre").  That customer, CLS Capital Group Inc. ("CLS"), deposited two cashier's checks totaling $75,000 that it received from Pierre into its account at Fifth Third in 2018.  Pierre sued CLS in state court in Toledo for that money back. (Amended Complaint, ¶ 38; *Pierre Investments, Inc. v. CLS Capital Group, Inc.*, et al., Lucas C.P. No. CI-2019-04258).[2]  The trial court dismissed Pierre's breach of contract claim against CLS.  (*Id*. at Oct. 28, 2021 Entry).  Pierre appealed.  (*Id*. at Nov. 24, 2021 Notice of Appeal).

Unsuccessful in state court, Pierre filed this suit against a number of Fifth Third entities (two of which do not exist), three Fifth Third employees, the Ohio Secretary of State, and the Delaware Secretary of State.  Pierre claims the Fifth Third Defendants should have "screened its customer," i.e. examined CLS's Delaware registration status prior to allowing CLS to deposit the $75,000, and, as a result of not doing so, are liable to Plaintiffs for the $75,000 and another $45 million for good measure.  Plaintiffs have no viable claim against the Fifth Third Defendants, and their Amended Complaint must be dismissed.  As they admit:

> "Plaintiff concedes that there was no relationship between the bank and Pierre when the fraud occurred.  Because there was no relationship, this factor does not lean toward a finding of a duty."

(Amended Complaint, Doc. 13, PageID 343, ¶ 148).

---

[2] The Court can take judicial notice of that case.  *See Hardin v. Reliance Trust Co.*, No. 1:04 CV 2079, 2006 U.S. Dist. LEXIS 70818, **7-8 (N.D. Ohio Sept. 29, 2006), citing *Lyons v. Stovall*, 188 F.3d 327 (6th Cir. 1999) ("It is well-settled that federal courts may take judicial notice of proceedings in other courts of record."); *Penn, LLC v. Prosper Bus. Dev. Corp.*, No. 2:10-cv-993, 2011 U.S. Dist. LEXIS 57366, **7-8 (S.D. Ohio May 27, 2011) (taking judicial notice of lawsuit pending in Ohio state court in ruling on motion to dismiss).

Put simply, because the Fifth Third Defendants owed no duty to Plaintiffs, the common law claims must fail. Further, the Fifth Third Defendants did not have any contract with Plaintiffs and made no representations or misrepresentations to Plaintiffs (and indeed had no relationship at all with them). Finally, the federal statutory and regulatory claims fail because those laws do not confer a private right of action.

II. **FACTUAL ALLEGATIONS**

A. **This Action**

Plaintiffs are two Texas companies and a Texas individual. (Doc. 13, PageID 320-21, ¶¶ 7-9). The Fifth Third Defendants are comprised of the following: a non-existent entity Plaintiffs call "Fifth Third Bank, an Ohio banking corporation"; a non-existent entity Plaintiffs call "Fifth Third Bank, Northwestern Ohio, NA Toledo"[3]; Fifth Third Bank, National Association, a national bank which is incorporated in Washington D.C., licensed in Ohio, and has its headquarters in Cincinnati, Ohio; Fifth Third Bancorp (the "Bancorp"), a holding company incorporated in Ohio and headquartered in Cincinnati; Brian Reid, a former Fifth Third employee; Julie Kristenak, a Fifth Third employee; and Blake Williams (identified by employee number), a Fifth Third employee. (*Id.*, ¶¶ 12-19). Plaintiffs also sued the Ohio and Delaware Secretaries of State, though they have since dismissed the former. (*Id.*, ¶¶ 10-11; Doc. 29).

Though lengthy, the pertinent facts in the Amended Complaint are simple. Plaintiffs allege they were victims of a fraudulent scheme orchestrated by Ohio company and non-party, CLS, along with its principal. (Doc. 13, ¶¶ 29-31). In November 2018, Plaintiff Pierre issued two cashier's checks, totaling $75,000, payable to CLS. (Doc. 13-3). CLS deposited those checks into its account at Fifth Third. (Doc. 13, ¶ 36). Pierre alleges it later learned that CLS was a "defunct corporation" that has been out of business since 2012. (*Id.*, ¶¶ 62, 102). Pierre,

---
[3] These non-entities are included in this Motion to Dismiss, to the extent Plaintiffs maintain a claim against them.

3

erroneously believing Fifth Third had authority to pillage its customer's account, asked Fifth Third "to retrieve the $75,000." (*Id.*, ¶ 62). Fifth Third did not do so. (*Id.*, ¶ 63).

That's the sum and substance of the claims against the Fifth Third Defendants. Boiled down, Plaintiffs blame the Fifth Third Defendants for their "failure to screen its customers" or perform other due diligence to ensure that CLS was actively registered in Delaware prior to allowing its customer to deposit a check into its account. (*See id.*, ¶ 41). This, according to the Plaintiffs, breached a "duty to Americans to verify whether out of state businesses had any directors before opening a new checking account." (*Id.*, ¶ 71).

### B. The State Court Action

In October 2019, Pierre sued CLS, its principal Reynaldo Uballe, Jr., and Comprehensive Lending Services Capital Group, LLC ("Comprehensive Lending") in Lucas County, Ohio. (Amended Complaint, ¶ 38; *see also Pierre Investments, Inc. v. CLS Capital Group, Inc.*, et al., Lucas C.P. No. CI-2019-04258).

The Fifth Third Defendants were not parties to, nor did they have any involvement in, that case. As explained in the state court's verdict which was rendered this past October, that case arose "from an attempt by [Pierre] to secure funding from [CLS] for a Texas land development project." (*Id.* at Oct. 28, 2021 Entry, *1). In November 2018, Pierre and CLS apparently signed a loan commitment for $10,000,000. (*Id.*). Pierre paid CLS a $75,000 loan commitment fee pursuant to that agreement. (*Id.*). CLS apparently assigned the agreement to Comprehensive Lending. (*Id.*). A dispute then arose between the parties, and the agreement was terminated. (*Id.* at **1-2). Pierre sued, requesting various damages, including a return of the $75,000 loan commitment fee which CLS deposited into its Fifth Third account. (*See id.* at *2).

The state court called the ensuing procedural history "lengthy and troublesome." (*Id*. at *22). When it all shook out after the eventual bench trial – during which CLS's principal testified – the court dismissed Pierre's breach of contract claim against CLS, mainly finding that CLS, not a currently registered legal entity, lacked the capacity to sue or be sued. (*Id*. at **23-29). The court also ruled in favor of the other Defendant, Comprehensive Lending, on Pierre's breach of contract claim against it, finding Pierre did not perform under that agreement. (*Id*. at **27-28). Pierre appealed. (*Id*. at Nov. 24, 2021 Entry). The appeal is pending. (*Pierre Investments, Inc. v. CLS Capital Group, Inc.*, et al., 6th Dist. Lucas No. L-21-1229; Amended Complaint, ¶¶ 38, 138).

### III. LAW AND ARGUMENT

Under Ohio law, a bank (like Fifth Third) owes no duty to a non-customer (like Plaintiffs). The mere fact that a bank's customer allegedly breached a contract with a third-party does not give rise to any cause of action by that third-party against the bank. The Fifth Third Defendants had no contract with Plaintiffs, and Plaintiffs allege none. None of the federal statutes under which Plaintiffs bring suit authorizes a private cause of action.

Plaintiffs' Amended Complaint asserts fourteen claims – many of them repetitive, none of them viable. For simplicity, they are grouped as follows: common law negligence (Counts I, II, VII, XIII); federal statutory and regulatory claims (Counts III, IV, V); common law fraud/misrepresentation (Counts VIII, IX, X); breach of contract (Counts XI, XII); and miscellaneous counts which are not actual causes of action at all (Count VI, XIV).

#### A. Negligence

Plaintiffs allege various offshoots of negligence:

- Count One: Common Law Negligence (Doc. 13, ¶¶ 92-96)

5

- Count Two: Respondeat Superior (*Id.*, ¶¶ 97-109).

- Count Seven: Agency and Vicarious Liability (*Id.*, ¶¶ 149-60)

- Count Thirteen: Negligence (*Id.*, ¶¶ 200-10).

These claims all fail for two simple reasons. First, a bank owes no duty to non-customers/non-accountholders. *Towne Auto Sales, LLC v. Tosbal Corp.*, No. 1:16-cv-02739, 2017 U.S. Dist. LEXIS 187990, *12 (N.D. Ohio Nov. 14, 2017), citing *Driessen v. Woodforest Nat. Bank*, 940 F. Supp.2d 584 (S.D. Ohio 2012) ("Ohio follows the prevailing rule that a bank owes no duty to a person who is neither a customer nor an account-holder."); *Loyd v. Huntington Natl. Bank*, No. 1:08 CV 2301, 2009 U.S. Dist. LEXIS 51858, *7 n.32 (N.D. Ohio June 18, 2009) ("Generally courts have held that a depositary bank does not owe any duty to a non-customer."); *Huntington Natl. Bank v. Kazmaier*, 175 Ohio App.3d 130, 2008-Ohio-603, 885 N.E.2d 314, 318 (Ohio Ct. App. 2008) (affirming grant of judgment on pleadings on negligence claim, finding bank owed no duty to non-customers).

Plaintiffs do not allege they were customers or accountholders of the Fifth Third Defendants (rather, CLS was Fifth Third's customer). Plaintiffs agree:

> Plaintiff concedes that there was no relationship between the bank and Pierre when the fraud occurred. Because there was no relationship, this factor does not lean toward a finding of a duty.

(Doc. 13, PageID 343, ¶ 148). As non-customers, Plaintiffs have no plausible negligence claim against the Fifth Third Defendants. These claims must be dismissed for that reason alone.

Second, the economic loss rule bars each of these negligence claims. *Towne Auto Sales*, 2017 U.S. Dist. LEXIS 187990 at *7 (collecting cases) ("The general rule applicable to situations in which privity of contract is lacking is there is no duty to exercise reasonable care to avoid intangible economic loss or losses to others that do not arise from tangible physical harm

6

to persons and tangible things."). Here, Plaintiffs' alleged losses are purely economic – the $75,000 they want back from CLS (and apparently another $45 million for some "lost income" and $3 million in "lost profit"). (*E.g.*, Doc. 13, ¶ 115). Plaintiffs do not allege any personal injury or property damage. Consequently, their negligence claims cannot stand. *See Towne Auto Sales*, 2017 U.S. Dist. LEXIS 187990 at *7 ("Plaintiff did not have a contractual relationship with BANA. Plaintiff's only alleged injury is $27,050 it purportedly paid in exchange for a Corvette it did not receive. Since the general rule does not allow a plaintiff to recover under a theory for negligence for loss that is solely economic, Plaintiff's [negligence] claim fails.").

Counts One, Two, Seven, and Thirteen should be dismissed.

### B. Federal Statutes and Regulations

Plaintiffs' next batch of claims all allege negligence under the guise of various federal statutes and regulations:

- Count Three: "Patriot Act/Anti-Money-Laundering Act, Anti-Terrorist Funding Act" (Doc. 13, ¶¶ 110-15)

- Count Four: "US Patriot Act of 2001" (*Id*., ¶¶ 116-29)

- Count Five: "Federal Reserve and OCC rules" (*Id*., ¶¶ 130-145)

Beyond the repetitive nature of Counts Three and Four, none of these causes of action state a claim for relief. That is because none of these federal statutes or regulations provide a private right of action.

The Anti-Money Laundering Act (also called the Bank Secrecy Act) gives the Secretary of the Treasury the power to require financial institutions to report suspicious activities to the appropriate government authorities. *Id*.; *Spitzer Mgmt. v. Interactive Brokers, LLC*, No. 1:13 CV 2184, 2013 U.S. Dist. LEXIS 178877, *6 (N.D. Ohio Dec. 20, 2013). Similarly, the Patriot Act

requires financial institutions to monitor and report suspicious transactions indicative of criminal or terrorist activities. *Spitzer Mgmt.*, 2013 U.S. Dist. LEXIS 178877 at *6.

This "monitor and report" duty is only owed to the United States government. There is no private cause of action under any of these statutes. *Id*. at **6-7 (collecting cases) (Patriot Act and Banking Secrecy Act do not create a private right of action). This is well-established. *Accord Belle Meade Title & Escrow Corp. v. Fifth Third Bank*, 282 F. Supp.3d 1033, 1039-40 (M.D. Tenn. 2017) (federal anti-money laundering and bank monitoring statutes "do not create a common law duty on the part of banks to non-customers," nor do they allow or confer a private cause of action); *Hackman v. Wilson*, 534 B.R. 867, 873 n.4 (E.D. Va. 2015) (collecting cases) ("there is no private right of action under the money laundering statutes"); *Towne Auto Sales*, 2017 U.S. Dist. LEXIS 187990 at **7-8 (collecting cases) (dismissing negligence, Patriot Act, and Bank Secrecy Act claims, as no private right of action is available under either statute); *Intl. Outdoor v. RBS Citizens Bank, N.A.*, No. 10-11368, 2010 U.S. Dist. LEXIS 158378, *16 (E.D. Mich. Sept. 28, 2010) (Bank Secrecy Act and Patriot Act do not provide for a private cause of action); *James v. Heritage Valley Fed. Credit Union*, 197 Fed. Appx. 102, 106 (3d Cir. 2006) (Bank Secrecy Act "does not authorize a private cause of action against a financial institution or its employees"); *Kraft v. Office of the Comptroller of Currency*, No. 4:20-CV-04111, 2021 U.S. Dist. LEXIS 65974, **10-11 (D.S.D. Apr. 5, 2021) (collecting cases) (granting motion to dismiss, holding "courts have repeatedly held that there is no private right of action under the Bank Secrecy Act or the USA Patriot Act").

Likewise as to violations of unidentified "Federal Reserve and OCC rules" (Doc. 13, ¶¶ 130-145). For starters, Plaintiffs do not identify or allege what "rule" the Fifth Third Defendants purportedly violated. *Sodano v. Discovery Fin. Servs.*, No. CIV S-11-2902, 2012 U.S. Dist.

LEXIS 55312, *9 (E.D. Cal. Apr. 19, 2012) ("Plaintiff may have intended to allege that Discover violated the OCC regulations. Assuming that was her intent, her claim fails because plaintiff has not alleged what OCC regulation she contends Discover violated, nor has she alleged any facts in support of such a violation. Accordingly, plaintiff's OCC claim must also be dismissed.").

In any case, like the federal statues noted above, Plaintiffs have alleged no facts giving rise to a private cause of action under any regulations promulgated by, or under the authority of, the Office of the Comptroller of the Currency ("OCC"). The OCC is the primary regulator of banks chartered under the National Bank Act, 12 U.S.C. § 21, *et seq*. *Bank of Am. v. City & County of San Francisco*, No. C-99-4817, 2000 U.S. Dist. LEXIS 12587, **4-5 (N.D. Cal. June 30, 2000). The regulations under its purview are enforced by the OCC directly; if an institution violates a rule, it is subject to penalties and litigation from and against the government – not private individuals. *In re Mastercard Intl., Inc.*, No. 00MD-1321, 2003 U.S. Dist. LEXIS 13534, *11 (E.D. La. July 30, 2003) (National Bank Act "only provides for enforcement by the Office of the Comptroller of the Currency," and there is no private right of action under either that Statute or the accompanying regulations); *Soberanis v. Mortg. Elec. Reg. Sys.*, No. 13-CV-1296, 2013 U.S. Dist. LEXIS 112099, **17-19 (S.D. Cal. Aug. 8, 2013) (statutes and regulations subject to the OCC's purview do not provide a private right of action; they merely "create comprehensive regulatory relationships between banking institutions and federal regulatory agencies").[4]

---

[4] Also, Fifth Third did not become subject to the OCC's jurisdiction until 2019. It is public record that, prior to that time, including in November 2018 during the actions complained-of, Fifth Third was a state-chartered bank under the purview of the Federal Reserve. In late 2019, it converted to a national bank, subject to the OCC's oversight. (*See* Exhibit A hereto). So to the extent this un-alleged OCC rule provides any cause of action, it would not have governed Fifth Third at the time.

9

Plaintiffs are two private companies and a private citizen, not the U.S. government. (Doc. 13, ¶¶ 7-9). Therefore, they have no private right of action under any of these statutes or regulations. The Court should dismiss Counts Three, Four, and Five.

### C. Common Law Fraud/Misrepresentation

In Counts Eight and Nine, Plaintiffs allege fraudulent misrepresentation and fraudulent inducement. (Doc. 13, PageID 349-354, ¶¶ 161-78). In Count Ten, Plaintiffs claim negligent misrepresentation. (*Id*., PageID 354-57, ¶¶ 179-85).

Fed. R. Civ. P. 9(b) requires fraud and misrepresentation claims to be pleaded with particularity. The Amended Complaint falls well short. First, Plaintiffs never identify the actual misrepresentation by any of the Fifth Third Defendants to them. *See Schmiedebusch v. Rako Realty, Inc.*, No. 04CAE08062, 2005-Ohio-4884, ¶ 18 n.3 (Ohio Ct. App. Sept. 16, 2005) (collecting cases) (fraud and negligent misrepresentation claims require a false representation); *Gupta v. Terra Nitrogen Corp.*, 10 F. Supp.2d 879, 883 (N.D. Ohio 1998) (fraud claims require the plaintiff to identify the specific statements made by the defendant which are allegedly fraudulent). In fact, Plaintiffs allege no individual communications or relationship with any of the Fifth Third Defendants at all. They admit the exact opposite: "Plaintiff concedes that there was no relationship between the bank and Pierre when the fraud occurred." (Doc. 13, PageID 343, ¶ 148).

Instead, their misrepresentation claims – whether fraudulent or negligent – are based on the theory "Fifth Third made representations" that the underlying transactions (the loan commitment between Plaintiffs and CLS) "were legitimate" simply because Fifth Third allowed its customer, CLS, to have a bank account at Fifth Third. (*Id*., ¶¶ 162-63, 170, 180; *see also id*., ¶ 29 (alleging CLS's "fraudulent scheme was facilitated by Defendants by their failure to

10

conduct proper due diligence on a foreign corporation doing business in Ohio prior to permitting them to open a business account")). Set aside that it is not actionable under any circumstances for a third party to complain that a bank provided its customer with a bank account (what Plaintiffs pejoratively call a "blank check" for its customer to engage in alleged fraud), none of the Fifth Third Defendants made any misrepresentation (or any representation at all) to Plaintiffs. Again, "there was no relationship between the parties when the fraud occurred." (*Id*., ¶ 148).

There is no viable claim for fraud or negligent misrepresentation when the purported misrepresentation was not made by the defendant to the plaintiff. *See also Kelly v. United States Bank Natl. Assn.*, No. 1:15-CV-01019, 2015 U.S. Dist. LEXIS 132734, *6 (S.D. Ohio Sept. 30, 2015) (dismissing fraud claim where plaintiff "did not identify any false statements U.S. Bank made to her with an intent to deceive her"); *Zakrajsek v. Mortg. Elec. Registration Sys.*, No. 1:16CV1085, 2017 U.S. Dist. LEXIS 127110, *16 (N.D. Ohio Aug. 10, 2017) ("[Plaintiff] does not identify the misrepresentations or promises, who made them nor when they were made. This claim utterly lacks the particularity required by Fed. R. Civ. P. 9(b)."); *Sooy v. Ross Incineration Servs.*, No. 98CA007031, 1999 Ohio App. LEXIS 4889, *28 (Ohio Ct. App. Oct. 20, 1999) ("A party cannot maintain an action for fraud when the fraudulent representations were not made to him to induce him to act upon them in any matter affecting his own interests. Accordingly, a plaintiff claiming that a third party relied on a misrepresentation made by the defendant and that the plaintiff suffered injury thereby does not state a valid cause of action for fraud").

Second, Plaintiffs do not plead any facts showing the Fifth Third Defendants had knowledge that any (non-existing) statement to Plaintiffs was false. *Bd. of Trs. v. Bright St., LLC*, No. 3:16-cv-481, 2018 U.S. Dist. LEXIS 162031, *7-8 (S.D. Ohio Sept. 21, 2018), citing *Burr v. Bd. of County Comm'rs*, 23 Ohio St.3d 69, 491 N.E.2d 1101 (1986) (required elements

are: (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying on it, (e) justifiable reliance on the representation or concealment, and (f) a resulting injury proximately caused by the reliance).

Again, straining to glean whatever the false representation at issue was here, at most it seems Plaintiffs believe Fifth Third provided CLS with a veil of legitimacy by allowing it to have a bank account. (Doc. 13, ¶ 163 (CLS appeared legitimate and "in business" "as seen through CLS having access to a business checking account")). But there are no factual allegations stating or even suggesting that Fifth Third should have known otherwise – i.e., that Fifth Third should have known CLS was not actually in business. To the contrary, the mere fact that CLS was depositing a check, addressed to it, into its business account suggests the opposite. Likewise, the Ohio Secretary of State's website reflects CLS as an active entity:

| | Business Details | | |
|---|---|---|---|
| Entity #: | 1958417 | Business Name: | CLS CAPITAL GROUP, INC. |
| Filing Type: | FOREIGN CORPORATION | Status: | Active |
| Original Filing Date: | 08/23/2010 | Exp. Date: | - |
| Location: | DELAWARE | | |

*Howard v. Good Samaritan Hosp.*, No. 1:21-cv-160, 2022 U.S. Dist. LEXIS 4087, **7-8 (S.D. Ohio Jan. 10, 2022) (taking judicial notice of information on the Ohio Secretary of State's website in dismissing complaint); *Engle v. UHaul*, 208 F. Supp.3d 844, 848 n.3 (S.D. Ohio 2016) (same). Therefore, there is no plausible inference that Fifth Third knew CLS was somehow not "in business."

Third, even assuming Plaintiffs alleged any false statement or Fifth Third's knowledge of it, Plaintiffs do not plead any justifiable reliance. *Bright St., LLC*, 2018 U.S. Dist. LEXIS

162031 at *7-8 (S.D. Ohio Sept. 21, 2018). Boiled down, it simply makes no sense for a party committing to a $10 million loan deal, and agreeing to pay a $75,000 loan commitment fee to that end, to rely on the mere existence of a bank checking account to believe its contracting partner was a reputable business. After all, if Fifth Third should have surmised that CLS was not "in business" by reviewing the Delaware Secretary of State's website or otherwise, then so should Plaintiffs – the ones embarking on a multi-million-dollar deal with CLS. *E.g.*, *Griggs v. Webber*, 350 B.R. 344, 368-69 (S.D. Tex. 2006) (collecting cases) ("Reliance is not justifiable if the defendant blindly relies upon misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation."); *Ridings v. Am. Family Ins. Co.*, No. 20 CV 5715, 2021 U.S. Dist. LEXIS 34448, **18-19 (N.D. Ill. Feb. 24, 2021) ("Reliance is not justifiable if a plaintiff has reason and opportunity to question the truth of the alleged misrepresentation.").

For any of these reasons, Counts Eight, Nine, and Ten should be dismissed.

### D. Breach of Contract

Next, in Counts Eleven and Twelve, Plaintiffs allege breach of contract and breach of contract (third-party beneficiary). (Doc. 13, PageID 357-60, ¶¶ 186-99). Both claims fail.

First, Plaintiffs do not plead the existence of any contract between themselves and any of the Fifth Third Defendants. (*See id.*, ¶¶ 187-94). They allege "written contracts which involved real estate" (*id.*, ¶ 189), but do not allege any of those contracts were with the Fifth Third Defendants as opposed to Fifth Third's customer. A breach of contract claim requires the existence of a contract between the parties. *New Lansing Gardens Hous., L.P. v. Columbus Metro Hous. Auth.*, No. 2:20-cv-2475, 2021 U.S. Dist. LEXIS 235145, *8 (Sept. 14, 2021). Plaintiffs later suggest some escrow contract with Fifth Third (Doc. 13, ¶ 192 ("Fifth Third

materially breached . . . by, among other things failing to protect the $75,000 in funds in a properly established escrow account")), but there are no allegations of any escrow agreement with Fifth Third. Of course, Plaintiff attaches no such escrow agreement either (because none existed). Absent any plausible contract between Plaintiffs and any of the Fifth Third Defendants, the breach of contract claim cannot stand.

The third-party beneficiary theory in Count Twelve fares no better. Plaintiffs theorize that Fifth Third "entered into their contractual relationship with" CLS for their benefit. (*Id.*, ¶ 196). But for a plausible third-party beneficiary claim, a plaintiff must establish the primary contract – here, between Fifth Third and CLS apparently – was breached. *Castelli v. Patmon*, No. 90103, 2008-Ohio-6468, ¶ 20 (Ohio Ct. App. Dec. 11, 2008) ("But even if we found . . . a binding contract, [plaintiff's] third-party beneficiary claim still fails. In order to recover under a third-party beneficiary theory, the plaintiff must assert a breach of the underlying contract.").

Here, Plaintiffs do not allege any breach by Fifth Third of its supposed contract with CLS. Notably, CLS, Fifth Third's customer, has never alleged a breach of any contract between it and Fifth Third. Rather, confusing things even more, Plaintiffs say "Defendant [not sure which one] breached any contract between themselves and these unknown third parties who believed that they were customers of CLS." (Doc. 13, ¶ 197). What contract? What "unknown parties"? Absent more specificity about what contract (between which parties) was breached (by whom), and how, these allegations simply do not state a plausible claim for relief.

The bottom line is that none of the Fifth Third Defendants had any contract with Plaintiffs, and none is alleged. Nor do Plaintiffs allege a breach of any other contract by any of the Fifth Third Defendants to which they were purported third party beneficiaries. Counts Eleven and Twelve must be dismissed.

### E. Non-Claims: "Public Policy" and Restitution

Finally, Plaintiffs assert claims for relief which are not actually causes of action at all. Count Six alleges simply, "Public Policy." (Doc. 13, ¶¶ 146-48). "Public policy" is not a claim. Moreover, to the extent Plaintiffs' Sixth Claim can be read to advocate for an expansion of the unanimous rule that banks owe no duty to non-customers (*id.* at PageID 346 ("**Consequences of Imposing the Duty on the Banks**")), the Court should decline to depart from previous precedent set by this and other courts. (*See supra* at pp. 6-7).

In addition to precedent, there are legitimate reasons for the no-duty-to-non-customer rule:

> The banking industry handles a tremendous volume of transactions which involve small, as well as large, sums of money. To meet the requirements and complexities of our present financial system, the negotiable instrument has emerged as the universal method of insuring the certainty of commercial transactions. ***When a bank receives a check for deposit which, in all aspects, is valid on its face, that bank has a right to treat the check as it would any other deposit. To require the bank to investigate the underlying transaction which led to issuance of the instrument or to permit a third person to challenge a depositor's ownership would result in an unreasonable burden upon, and disruption of, regular and normal banking transactions.***

*Midwest Feeders, Inc. v. Bank of Franklin*, No. 5:14-cv-78, 2017 U.S. Dist. LEXIS 6825, \*\*13-14 (S.D. Miss. Jan. 18, 2017) (collecting cases and emphasis added).

As for Plaintiffs' last and final claim for "Restitution" (Doc. 13, ¶¶ 211-12), that is a mere remedy, not a standalone cause of action. *Lycan v. City of Cleveland*, No. 94353, 2010 Ohio App. LEXIS 5062, \*\*4-5 (Oh. Ct. App. Dec. 9, 2010) ("restitution is a remedy, not a cause of action"); *Farm Credit Bank v. United States Mineral Prods. Co.*, 864 F. Supp. 643, 647 (W.D. Ky. 1994) ("Restitution is a theory of recovery, not a cause of action.").

Plus, Plaintiffs' allegation that "Defendants acquired money from Plaintiffs" is wrong and contradicted by Plaintiffs' other allegations – namely, that CLS took that money. (*E.g.*, Doc.

15

13, ¶ 36 ("Pierre mailed two cashier's checks totaling $75,000 which were to be paid to the order of CLS Capital Group Inc."); ¶ 39 ("At trial, Uballe testified that he deposited the funds and then withdrew the $75,000.")). The Fifth Third Defendants neither accepted nor took any money from Plaintiffs. These inconsistent allegations are not accepted as true. *See In re Officemax, Inc. Secs. Litig.*, No. 1:00-CV-2432, 2002 U.S. Dist. LEXIS 27019, *49 (N.D. Ohio Mar. 26, 2022) (granting motion to dismiss where, among other things, allegations were inconsistent with one another); *Aaron v. Medtronic, Inc.*, 209 F. Supp.3d 994, 1015-16 (S.D. Ohio 2016) (same, and explaining the distinction between permissibly pleading inconsistent claims and impermissibly pleading inconsistent factual allegations); *Jiangbo Zhou v. Lincoln Elec. Co.*, No. 1:20-cv-00018, 2020 U.S. Dist. LEXIS 85796, **9-12 (S.D. Ohio May 15, 2020) (court is not required to accept as true inconsistent factual allegations).

### IV. CONCLUSION

For the foregoing reasons, Plaintiffs do not state a claim on which relief can be granted against Defendants Fifth Third Bancorp, Fifth Third Bank, National Association, Brian Reid, Julie Kristenak, and Blake Williams (nor the non-entities "Fifth Third Bank, an Ohio Corporation" and "Fifth Third Bank, Northwestern Ohio, NA Toledo"). The Court should dismiss the Amended Complaint against all Fifth Third parties, with prejudice.

Respectfully submitted,

*/s/ Andrew B. Cassady*
Harry W. Cappel (0066513)
Andrew B. Cassady (0092413)
DINSMORE & SHOHL LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
P: (513) 977-8200
harry.cappel@dinsmore.com
andrew.cassady@dinsmore.com

*Counsel for Defendants*
*Fifth Third Bancorp, Fifth Third Bank,*
*National Association, Brian Reid, Julie*
*Kristenak, and Blake Williams*

### CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of May, 2022, the foregoing document was electronically filed with the Clerk of Courts for the U.S.D.C. for the Southern District of Ohio via the Court's CM/ECF system, which system will notify all parties of the filing of same. The parties may access this filing through the Court's system.

*/s/ Andrew B. Cassady (0092413)*
Andrew B. Cassady