Exhibit A

 **Office of the Comptroller of the Currency**

Washington, DC 20219

September 10, 2019

Hope D. Schall
Senior Vice President & Deputy General Counsel
Fifth Third Bank
38 Fountain Square Plaza
MD 10909F
Cincinnati, Ohio 45263

Re:    Application by Fifth Third Bank, Cincinnati, Ohio, to Convert to a National Banking
Association and Exercise Fiduciary Powers

OCC Control Numbers: 2019-CE-Conversion-309147
2019-CE-Fiduciary-309595

Dear Ms. Schall:

The Office of the Comptroller of the Currency (OCC) hereby approves Fifth Third Bank's
application to convert to a national banking association under 12 USC 35 and 12 CFR 5.24, to
exercise fiduciary powers under 12 USC 92a, and to retain all of its branches, subsidiaries, and
investments.  The converted bank will operate under the title of Fifth Third Bank, National
Association, with OCC Charter Number 25190.  These approvals are granted after a thorough
review of the application, other materials you have supplied, and other information available to
the OCC, including commitments and representations made by the applicant's representatives
during the application process.  This approval is also subject to the representations and
requirements set out herein.

## I.    Introduction

On May 30, 2019, Fifth Third Bank, Cincinnati, Ohio ("Bank"), an Ohio state-chartered bank,
filed an application with the OCC to convert to a national banking association with the title
"Fifth Third Bank, National Association" (Fifth Third-NA), under 12 USC 35 (the
"Conversion"), and to exercise fiduciary powers under 12 USC 92a, similar to those currently
exercised by the Bank.  The Bank is an indirect, wholly-owned subsidiary of Fifth Third
Bancorp, Cincinnati, Ohio.

Following the Conversion, Fifth Third-NA will operate the Bank's main office at 38 Fountain
Square Plaza, Cincinnati, Ohio, as its main office.  The Bank currently operates over 1,200
branches in Ohio, Florida, Georgia, Illinois, Indiana, Kentucky, Michigan, North Carolina,
Tennessee, and West Virginia.  The Bank's application includes a request for Fifth Third-NA

Fifth Third Bank
2019-CE-Conversion-309147
Page 2

to retain those branches under 12 USC 36(b)(1). The Bank also has a number of domestic subsidiaries and other investments, and has requested approval for Fifth Third-NA to retain these subsidiaries and investments.

## II.    Legal Authority for the Transaction

### A.    Authority for the Conversion and Fiduciary Powers

The conversion application meets the requirements of 12 USC 35 for approval for the Bank to convert to a national bank. The Bank is organized under the general laws of the State of Ohio, and thus is a "state bank" within the meaning of section 35. The Conversion would not be in contravention of state law. Section 1115.01 of the Ohio Revised Code permits Ohio state banks and trust companies to convert to a national charter, subject to certain requirements that the Bank represents have been met. Only Ohio law, and not also the laws of the nine other states where the Bank operates branches, is relevant to this requirement.[1] The Bank also meets the other criteria in section 35, including shareholder approval, as its immediate parent, Fifth Third Financial Corporation, Cincinnati, Ohio, which is the sole shareholder, has approved the Conversion. Thus, the Conversion is authorized under section 35.

The Bank currently has fiduciary powers and exercises those powers in twelve states. It plans to continue conducting core fiduciary activities in each state where it operates, eventually migrating those core fiduciary activities to its office(s) in Ohio, and it has requested permission to conduct that activity as a national bank. Pursuant to 12 USC 92a(a) and 12 CFR 9, the OCC grants Fifth Third-NA the right to act in the fiduciary capacities listed in the statute and in any other fiduciary capacities permitted to state banks and trust companies in the states in which the national bank is located, when not in contravention of state law.

### B.    Retention of Branches in the Conversion

The authority of Fifth Third-NA, as the national bank resulting from the Conversion, to retain the existing branches of the Bank is governed by 12 USC 36(b)(1). Section 36(b)(1) provides:

> A national bank resulting from the conversion of a State bank may retain and operate as a branch any office which was a branch of the State bank immediately prior to conversion if such office –
>> (A) might be established under subsection (c) of this section as a new branch of the resulting national bank, and is approved by the Comptroller of the Currency for continued operation as a branch of the resulting national bank;
>> (B) was a branch of any bank on February 25, 1927; or
>> (C) is approved by the Comptroller of the Currency for continued operation as a branch of the resulting national bank.

---

[1] See Decision on the Application of Republic Bank for Savings, New York, New York, to Convert into a National Banking Association (OCC Corporate Decision No. 95-32, July 25, 1995).

Fifth Third Bank
2019-CE-Conversion-309147
Page 3

> The Comptroller of the Currency may not grant approval under clause (C) of this
> paragraph if a State bank (in a situation identical to that of the national bank) resulting
> from the conversion of a national bank would be prohibited by the law of such State
> from retaining and operating as a branch an identically situated office which was a
> branch of the national bank immediately prior to conversion.

Fifth Third-NA has the authority to retain the Bank's branches under both Clause (A) and
Clause (C). Under Clause (A), the resulting national bank may retain any branch of the
converting state bank if that branch might be established as a new branch of the resulting
national bank under 12 USC 36(c). Under section 36(c), a national bank may establish
branches at any point within the state in which the national bank "is situated," if such
establishment is authorized for state banks by the statute law of the state in question. For
purposes of applying section 36(b)(1), Fifth Third-NA is situated in each of the ten states in
which the Bank had its main office or branches, and all of those states authorize the
establishment of branches for state banks without geographic limit.[2] The OCC has previously
determined that the statutory authorization in each of the ten states is sufficient for purposes of
section 36(c) and imposes no geographical limits on the establishment of intrastate branches by
state banks. Thus, a national bank situated in each state could establish the Bank's branch
locations as branches under section 36(c). Therefore, Fifth Third-NA may retain them under
section 36(b)(1)(A).

Similarly, Fifth Third-NA also may retain the branches in each state under section 36(b)(1)(C),
because an identically situated state bank resulting from the conversion of an interstate national
bank would not be prohibited by the law of each state from retaining identically situated offices
that were branches of the national bank before the conversion. No laws of any of the states by
their terms expressly prohibit a state bank resulting from the conversion of an interstate
national bank from retaining its branches.

Moreover, Fifth Third-NA's retention of the branches in the ten states is also consistent with
the Riegle-Neal Act of 1994.[3] The Act added a new provision, 12 USC 36(e)(1), limiting the
ability of national banks to acquire branches in new states to specified ways:

> Effective June 1, 1997, a national bank may not acquire, establish, or operate a
> branch in any State other than the bank's home State (as defined in subsection
> (g)(3)(B) of this section) or a State in which the bank already has a branch
> unless the acquisition, establishment, or operation of such branch in such State
> by such national bank is authorized under this section or section 1823(f),
> 1823(k), or 1831u of this title.

---

[2] Fla. Stat. § 658.26(2)(a); Ga. Code § 7-1-601(a) and 602; 205 Ill. Comp. Stat. 5/5(15)(a); Ind. Code § 28-2-13-19(a); Ky. Rev. Stat. § 286.3-180(2); Mich. Comp. Laws 487.13711(1); N.C. Gen. Stat. § 53C-6-15(a); Ohio Rev. Code § 1117.01(A); Tenn. Code § 45-2-614(a); W. Va. Code § 31A-8-12(c).

[3] Riegle-Neal Interstate Banking and Branching Act of 1994, Pub. L. No. 103-328, 108 Stat. 2338 (1994).

Fifth Third Bank
2019-CE-Conversion-309147
Page 4

Fifth Third-NA's retention of the branches complies with the terms of section 36(e) in two ways. First, the Bank already operates branches in the ten states, and so Fifth Third-NA is not acquiring, establishing, or operating branches in a new state in which it did not have a branch before, it is merely continuing the corporate identity and existence, property, assets, and banking business of the state bank.[4] Second, as discussed above, Fifth Third-NA is authorized to retain the branches under sections 36(b)(1)(A) & (C), a part of "this section" included in section 36(e)(1). Accordingly, Fifth Third-NA may retain the offices of the Bank that were branches of the Bank immediately prior to the Conversion under section 36(b)(1). The OCC will provide the Bank a list of those branches separately.[5]

## C.     Retention of Subsidiaries and Investments

### 1.     Operating Subsidiaries, Non-controlling Investments, and Financial Subsidiaries

The Bank has a number of subsidiaries and other equity investments, which conduct various activities including lending, leasing, securitizations, insurance sales, securities brokerage, investment advising, and holding OREO and other bank assets. The Bank requests OCC approval for Fifth Third-NA to retain its operating and financial subsidiaries, and its non-controlling investments.[6] All of the activities described by the Bank as occurring in the subsidiaries are permissible for national bank subsidiaries as either operating subsidiaries or financial subsidiaries. Similarly, all of the non-controlling equity investments are permissible. A list of all first and second tier operating subsidiaries, financial subsidiaries, and non-controlling investments will be provided separately.

### 2.     Bank Premises Subsidiaries

The Bank owns four bank premises subsidiaries that own or manage premises used by the bank and are permissible under 12 USC 29(First) and 371d, and 12 CFR 5.37.

---

[4] See Decision on the Applications of JPMorgan Chase Bank (OCC Conditional Approval No. 658, October 2004).

[5] In addition, the Bank had four approved but not yet opened branches at the time the Conversion application was filed. If those branches are opened prior to the Conversion, authority to retain them will be included under section 36(b)(1). The Bank also operates two foreign branches in Toronto, Canada, and Georgetown, Grand Cayman, under the authority of Regulation K, 12 CFR 211.3, and Fifth Third-NA will continue to operate these branches after the Conversion. Under 12 CFR 28.3(a), national banks are required to notify the OCC regarding foreign branches. The Bank included a notification of its foreign branches in the application, in fulfillment of this requirement.

[6] The Bank also owns 100% of Fifth Third International Company, MB Financial International, Inc., and Fifth Third Business Capital Canada Inc., established under Regulation K, 12 CFR 211, that will be retained following the Conversion. The Bank will consult with the Federal Reserve System to determine if any filing is required under Regulation K with regard to Fifth Third-NA's continued operation of these entities after the Conversion.

Fifth Third Bank
2019-CE-Conversion-309147
Page 5

**3.      Small Business Investment Corporation Investments**

The Bank has investments in a number of small business investment companies (SBICs).
Pursuant to 15 USC 682(b), national banks may invest in one or more SBICs or in any entity
established to invest solely in SBICs in an aggregate amount not to exceed five percent of the
bank's capital and surplus.  The Bank's aggregate investment is well below this limit, and the
Bank may retain these investments pursuant to 15 USC 682(b).

**4.      Public Welfare Investments**

The Bank seeks approval to retain several public welfare investments pursuant to
12 USC 24(Eleventh) and 12 CFR 24.  The Bank has represented that its investments comply
with the public welfare beneficiary requirement of 12 CFR 24.3, or the investments would be
considered as a "qualified investment" under 12 CFR 25.23 for purposes of the Community
Reinvestment Act.  The Bank also represents that the investments comply with the investment
limit requirements of 12 CFR 24.4, and do not expose the Bank to unlimited liability,
consistent with 12 CFR 24.4(b).  The OCC has determined that the Bank's public welfare
investments comply with the public welfare and the investment limit requirements of
12 CFR 24, are consistent with 12 USC 24(Eleventh), and may be retained.

**D.      Investment in Bank Premises**

Pursuant to 12 CFR 5.37(d)(2), the Supervisory Office has approved an additional investment
in bank premises, including leasehold improvements, resulting in a total investment in bank
premises in an amount not to exceed $1.672 billion.  The Bank's investment in bank premises
may not be increased above this amount without first obtaining OCC approval.

**III.     Pre-Conversion Requirements**

The following items must be satisfied on or before the effective date of the Conversion:

1.  The Bank must purchase adequate fidelity bond coverage in accordance with
    12 CFR 7.2013, which lists factors the directors should consider to determine adequacy.

2.  The board of directors must adopt policies, practices, and procedures to ensure the safe
    and sound operation of the bank.  The board also must review those policies, practices,
    and procedures continually and ensure the Bank's compliance with them.

3.  The Bank must maintain its Federal Reserve membership.

4.  The Bank must ensure all other required regulatory approvals have been obtained.

5.  The directors must own qualifying shares in conformance with 12 USC 72 and
    12 CFR 7.2005.

Fifth Third Bank
2019-CE-Conversion-309147
Page 6

Upon completion of all steps required to convert to a national banking association, Bank staff should submit the enclosed Conversion Completion Certification certifying completion. Please provide the OCC with at least 10 days advance notice of the Conversion. When the Bank has satisfactorily completed all of the above steps, the OCC will issue a Conversion Completion Acknowledgment officially authorizing the institution to commence business as a national bank. Shortly after conversion, you will receive a charter certificate.

## IV.     Conclusion

If the Conversion is not consummated within six months from the date of the decision, the approval will automatically terminate unless the OCC grants an extension. The OCC does not grant extensions of the approval period, except under extenuating circumstances, and expects the Conversion to occur as soon as possible after approval.

OCC handbooks, manuals, bulletins, and other publications are available for download at http://www.occ.gov/publications/index-publications.html and https://www.occ.gov/news-issuances/news-releases/index.html. Bank staff can subscribe to the OCC News E-mail List at www.occ.gov/tools-forms/subscribe/occ-email-list-service.html. OCC news releases, bulletins, and alerts are also available by subscribing to the agency's four RSS news feeds at www.occ.gov/rss/index-rss.html.

This approval and the activities and communications by OCC employees in connection with the filing do not constitute a contract, express or implied, or any other obligation binding upon the OCC, the United States, any agency or entity of the United States, or any officer or employee of the United States, and do not affect the ability of the OCC to exercise its supervisory, regulatory, and examination authorities under applicable law and regulations. The OCC's approval is based on the Bank's representations, submissions, and information available to the OCC as of this date. The OCC may modify, suspend, or rescind this approval if a material change in the information on which the OCC relied occurs prior to the date of the transaction to which this decision pertains. The foregoing may not be waived or modified by any employee or agent of the OCC or the United States.

A separate letter is enclosed requesting your feedback on the processing of the referenced application. The OCC would appreciate your feedback. Please include the OCC control number on any correspondence related to this filing. If you have any questions, please contact Senior Licensing Analyst Carolina M. Ledesma by telephone at (312) 360-8867 or by e-mail at carolina.ledesma@occ.treas.gov.

Sincerely,

Stephen A. Lybarger
Deputy Comptroller for Licensing