# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Pierre Investments, Inc.,** *et al.* | ) Case No. 1:22-cv-155 |
| Plaintiffs, | ) JUDGE TIMOTHY S. BLACK |
| vs. | ) MAGISTRATE JUDGE STEPHANIE K. BOWMAN |
| **Fifth Third Bancorp,** *et al.* | ) **REPLY IN SUPPORT OF FIFTH THIRD DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT** |
| Defendants. | ) |

A Fifth Third Bank, National Association ("Fifth Third") customer had a checking account at Fifth Third. That customer allegedly breached a contract with and/or defrauded Plaintiff Pierre Investments, Inc. ("Pierre Investments"). Pierre Investments sued that Fifth Third customer in state court, lost, and appealed – which appeal remains pending.

Now in this action, Plaintiffs say Fifth Third, its employees, and affiliates are all responsible for its customer's alleged contract breach solely because Fifth Third allowed that customer to have a checking account in the first place. There is no precedent for that. The law is unequivocally the opposite: a bank owes no duty to non-customers/non-accountholders. Not only do Plaintiffs not refute this well-established law, Plaintiffs acknowledge it numerous times, calling it a "loophole" which they believe ought to "be closed."

In reality, this principle – a bank owes no duty to scrutinize its customers' transactions for the benefit of third-parties with whom it has no relationship – exists for a reason:

> The banking industry handles a tremendous volume of transactions which involve small, as well as large, sums of money . . . When a bank receives a check for deposit which, in all aspects, is valid on its face, that bank has a right to treat the check as it would any other deposit. To require the bank to investigate the underlying transaction which led to issuance of the instrument or to permit a third person to challenge a depositor's ownership would result in an unreasonable burden upon, and disruption of, regular and normal banking transactions.

*Midwest Feeders, Inc. v. Bank of Franklin*, No. 5:14-cv-78, 2017 U.S. Dist. LEXIS 6825, \*\*13-14 (S.D. Miss. Jan. 18, 2017).

Plaintiffs want the Court to disrupt this settled precedent all because Fifth Third did not detect that one of its accountholders apparently had not paid franchise taxes in its home state of Delaware, causing its Delaware registration status to lapse. Set aside that a bank owes no duty to non-customers, if Fifth Third "could have discovered" this by checking the Delaware Secretary of State's website in 2017 – the "duty" Plaintiffs ascribe to the Bank – then so could and should have Plaintiffs, who were apparently engaged in a $10 million deal with that customer. Either way, there is no viable claim by Plaintiffs, non-Fifth Third customers, against the Fifth Third Defendants here. The Court should dismiss all remaining claims,[1] with prejudice.

### A. The Negligence Claims: Plaintiffs acknowledge there is no duty here and do not address the economic loss rule.

Counts One, Two, Seven, and Thirteen all allege iterations of negligence. (Doc. 13, ¶¶ 92-96, 96-109, 149-160, 200-210). They must be dismissed.

For starters, Plaintiffs do not even respond to Fifth Third's Motion to Dismiss these claims. The only substantive claims they address in Opposition are their common law fraud and misrepresentation claims. (Doc. 41, PageID 618-23). For that reason alone, the negligence-based claims should be dismissed.

Even had Plaintiffs addressed these claims, they cannot stand. Negligence requires duty. *Towne Auto Sales, LLC v. Tosbal Corp.*, No. 1:16-cv-02739, 2017 U.S. Dist. LEXIS 187990, \*6 (N.D. Ohio Nov. 14, 2017), citing *Feldman v. Howard*, 10 Ohio St.2d 189, 226 N.E.2d 564 (1967). The duty alleged by Plaintiffs in this case has been put several different ways, but boiled down appears to be that a bank must verify that its corporate customer/accountholders are

---

[1] Plaintiffs voluntarily dismissed with prejudice Counts 11 (Breach of Contract), 12 (Breach of Contract/Third-Party Beneficiary), and 14 (Restitution). (Doc. 42).

2

properly registered and active in their home states prior to permitting them to deposit a check, and without which, the bank is liable to third-parties/non-customers for that accountholder's contractual breaches, fraud, and otherwise. For example, Plaintiff argues, "It is reasonable to expect a bank to verify that a business is registered with its home state"; "A bank is required to do more than a business in order to determine if a corporation is legit"; and "When the Ohio Secretary of State records show that it is 'foreign,' it must go to the records of the Secretary of State in the entity's home state." (Doc. 41, PageID 613, 619).

***Plaintiffs do not cite a single authority imposing such a duty***. In actuality, the law on this point is undisputed: banks owe no duty to non-customers to regulate the activity of its accountholders. *Towne Auto Sales*, 2017 U.S. Dist. LEXIS 187990 at \*12, citing *Driessen v. Woodforest Nat. Bank*, 940 F. Supp.2d 584 (S.D. Ohio 2012) ("Ohio follows the prevailing rule that a bank owes no duty to a person who is neither a customer nor an account-holder."); *Huntington Natl. Bank v. Kazmaier*, 175 Ohio App.3d 130, 2008-Ohio-603, 885 N.E.2d 314, 318 (Ohio Ct. App. 2008) (affirming grant of judgment on pleadings on negligence claim, finding bank owed no duty to non-customers); *Loyd v. Huntington Natl. Bank*, No. 1:08 CV 2301, 2009 U.S. Dist. LEXIS 51858, \*7 n.32 (N.D. Ohio June 18, 2009) ("Generally courts have held that a depositary bank does not owe any duty to a non-customer.").

Plaintiffs acknowledged this in their Amended Complaint: "Plaintiff concedes that there was no relationship between the bank and Pierre when the fraud occurred. Because there was no relationship, this factor does not lean toward a finding of a duty." (Doc. 13, PageID 343, ¶ 148). And even now, they continue to acknowledge it, arguing their "Public Policy" cause of action "refers to the need to close the loophole," (Doc. 41, PageID 621) and repeatedly citing that the law as it currently exists does not require what Plaintiffs demand. (*Id*. at PageID 624 ("When

one tries to open up a business checking account for a defunct corporation without principals, this is the kind of suspicious activity that one would think would be reported. Under the law as it is now, it does not have to be reported.")). In short, the duty alleged here simply does not exist. Therefore, none of the negligence claims can stand.

Separately, and an independent basis for dismissal, Plaintiffs' negligence claims are barred by the economic loss rule. *Towne Auto Sales*, 2017 U.S. Dist. LEXIS 187990 at *7 (collecting cases) ("The general rule applicable to situations in which privity of contract is lacking is there is no duty to exercise reasonable care to avoid intangible economic loss or losses to others that do not arise from tangible physical harm to persons and tangible things."). Plaintiffs' alleged losses in this case are solely economic. (Doc. 41, PageID 620 ("Plaintiffs bring this claim in order to recover the cashiers checks that were mailed from Texas to Ohio in November 2018")). Plaintiffs do not refute, let alone even mention, the economic loss rule. (*See generally* Doc. 41). It applies, and dooms the negligence claims.

For any of these reasons, all of the negligence-based claims in Counts One, Two, Seven, and Thirteen should be dismissed.

    **B.**    **The Federal Statutory Claims: Plaintiffs acknowledge these federal statutes and regulations do not provide a private cause of action.**

In Counts Three through Five, Plaintiffs charge Fifth Third with violating a hodgepodge of federal statutes and regulations, including the Patriot Act/Anti-Money Laundering Act, Anti-Terrorist Funding Act, US Patriot Act of 2001, and some unidentified rules promulgated by the Federal Reserve and/or Office of The Comptroller of The Currency. (Doc. 13, ¶¶ 110-145).

As Fifth Third pointed out in its Motion, none of these statutes or regulations provide a private cause of action. (Doc. 40, PageID 594-96). Rather, if anything, they give enforcement authority to the United States Government. *E.g.*, *Spitzer Mgmt. v. Interactive Brokers, LLC*, No.

4

1:13 CV 2184, 2013 U.S. Dist. LEXIS 178877, *6 (N.D. Ohio Dec. 20, 2013); *Belle Meade Title & Escrow Corp. v. Fifth Third Bank*, 282 F. Supp.3d 1033, 1039-40 (M.D. Tenn. 2017); *Towne Auto Sales*, 2017 U.S. Dist. LEXIS 187990 at **7-8.

Once again, Plaintiffs do not even try to refute this law and continue to cite no authority giving them (private citizens) the ability to sue under these statutes. Not only that, Plaintiffs appear to also argue that all (or some) of the underlying statutes were not even violated. (*E.g.*, Doc. 41, PageID 624 ("Under the law as it is now, it does not have to be reported."); PageID 624 ("As the laws are now, there is a loophole that allows banks to open up fraudulent bank accounts without oversight by the Federal Reserve or the OCC."); PageID 625 ("The opening of bank accounts in error is not covered by the Bank Secrecy Act.")). Whether disparagingly called a "loophole" or otherwise, Fifth Third agrees with Plaintiffs that these statues do not allow them to sue. The Court should dismiss Counts Three, Four, and Five without more.

Regarding Count Five specifically, Plaintiffs alleged violation of some unspecified rules promulgated by the Federal Reserve and OCC. (Doc. 13, ¶¶ 130-145). In addition to the facts that (1) Plaintiffs did not cite any specific rules and (2) the rules established by the Federal Reserve and OCC do not provide for private rights of action (*see* Doc. 40, PageID 595-596), Fifth Third noted in its Motion that it did not become subject to the OCC's jurisdiction until 2019, which post-dated the actions complained of here. To that end, Fifth Third attached a publicly-available record (a letter from the OCC) showing when Fifth Third came under the OCC's purview. (Doc. 40, PageID 595 n.4 & Doc. 40-1). The net of all this being, even if Plaintiffs had any private cause of action for any unidentified rules established by the OCC (they do not), those rules would not have applied to Fifth Third for the applicable time period.

5

In an attempt to divert, Plaintiffs claim the OCC letter attached to the Motion to Dismiss requires the Motion to be denied as "outside the pleadings." (Doc. 41, PageID 623, 626). This is a red-herring for two reasons. First, the Court can take judicial notice, on a motion to dismiss, of such publicly-available documents. *In re Huffy Corp. Secs. Litig.*, 577 F. Supp.2d 968, 978-79 (S.D. Ohio 2008); *Frank v. Pnc Bank, N.A.*, No. 1:19-cv-866, 2020 U.S. Dist. LEXIS 255627, **2-3 (S.D. Ohio June 26, 2020) (taking judicial notice of records published online by the OCC); *Akins v. United States Bank*, No. 18-2725, 2019 U.S. Dist. LEXIS 57986, **5-6 (W.D. Tenn. Apr. 4, 2019) (same).

Second, and more important here, Plaintiffs now completely retreat from the OCC, writing, "Plaintiff is not relying on the approval letter as a basis for its claims *since two banks named as defendants were under the Federal Reserve and not the OCC when the events took place*." (Doc. 41, PageID 623) (emphasis added). Fifth Third does not understand, then, why Plaintiffs have sued for violation of some OCC regulations. And indeed, the entire (and only) point of Fifth Third attaching the OCC letter was to make the very point which Plaintiffs now apparently concede: the OCC rules do not apply to this case. So for either of these reasons, Exhibit A to Fifth Third's Motion does not present issues "more appropriately considered within the purview of a motion for summary judgment," as Plaintiffs pivot. (Doc. 41, PageID 626).

**C. The Fraud and Misrepresentation Claims: Plaintiffs do not allege any statements or misstatements by Fifth Third to Plaintiffs, do not allege any knowledge by Fifth Third that such non-existent statements were false, and do not allege any justifiable reliance on such non-existent statements.**

a. <u>No False Statements Alleged</u>

The Amended Complaint does not plead any fraud or misrepresentation by Fifth Third with the particularity required by Fed. R. Civ. P. 9(b). Actually, the Amended Complaint does not plead any affirmative statements or misrepresentations by Fifth Third at all. Plaintiffs are

crystal clear: "there was no relationship between the bank and Pierre when the fraud occurred." (Doc. 13, PageID 343, ¶ 148). Fifth Third agrees. Plaintiffs were not Fifth Third customers. Fifth Third never had any contact with Plaintiffs, and Plaintiffs do not allege otherwise.

Plaintiffs respond with four purported "specific statements" which they say were false: "1) Fifth Third Northwestern was in business in 2016 (even though it was closed in 2014) according to billing statements sent out after it was out of business (*Amended Complaint*, Exhibit 1, p. 5); 2) Use of a P.O. Box after the bank was out of business; (*Amended Complaint*, Exhibit 1, p. 5); 3) use of Fake QR Codes on documents provided to Plaintiffs to induce them to believe that there was a Fifth Third Account handling escrow funds legitimately (*Amended Complaint*, Exhibit 1, p. 7); 4) Wiring ability of a fake business which was misrepresented as legit." (Doc. 41, PageID 618).

Respectfully, Fifth Third does not know what Plaintiffs are even talking about here. The first and second supposed false statements reference Page 5 of Exhibit 1 to the Amended Complaint, which is just a bank statement that appears to have been issued to "Mockensturm LTD IOLTA CLS Capital Escrow Account." (Doc. 13-1, PageID 370). Plaintiffs do not allege that Fifth Third sent these bank statements to them. Rather, Plaintiffs cite this document in four paragraphs of its Amended Complaint:

- "On or about April 1, 2016, Uballe through assistance of his Ohio attorney opened an escrow account at Fifth Third at the Toledo branch as if Uballe was a director of CLS Capital Group Inc and was in need of an escrow account. (Exhibit 1, p. 5)" (Doc. 13, ¶ 43).

- "After failing to verify, Fifth Third allowed an individual to be named on an escrow account as part of an IOLTA account. (Exhibit 1, p. 5)" (*Id.*, ¶ 74).

- "After failing to verify, Fifth Third has sent 'Account Analysis Invoices' to 'CLS Capital Escrow Account in care of a law firm's IOLTA account. (Exhibit 1, p. 5)" (*Id.*, ¶ 75).

7

- "In December 2016, Fifth Third Bank (Northwestern Ohio) was still sending 'Account Analysis Invoices' to its customers. (Exhibit 1, p. 5)" (*Id.*, ¶ 79).

None of these involve Fifth Third making any statement (false or otherwise) to any of the three Plaintiffs in this case. Again, Plaintiffs were not Fifth Third customers. Their claim, instead, is that they were defrauded by a Fifth Third customer, perhaps by its customer's provision of these documents to them. But there are no allegations that Fifth Third had any interaction or dealings with Plaintiffs in any manner. "[T]here was no relationship between the bank and Pierre when the fraud occurred," even according to Plaintiffs. (Doc. 13, ¶ 148).

Purported false statements # 3 and # 4 likewise don't add up to fraud against Fifth Third. Number 3 alleges "use of Fake QR codes on documents provided by Plaintiffs to induce them to believe that there was a Fifth Third Account handling escrow funds legitimately (*Amended Complaint*, Exhibit 1, p. 7)." (Doc. 41, PageID 618). Fifth Third has no idea what Plaintiffs mean by "fake QR codes," but again Plaintiffs never allege that Fifth Third sent these documents to them or made any statements about these documents to them. The only time this particular document is referenced in the Amended Complaint is Paragraph 82:

> 82. On the "Deposit Account Resolution" form (Exhibit 1, p. 7) there is a section for corporations which states:
>
> The undersigned certifies that they are the Secretary of _____
>                                                             (Name of corporation)
>
> ("Company") and at a meeting of the Board of Directors held on the __day of _____, yr ____ at which a quorum was present these resolutions were duly adopted. The undersigned certifies that the foregoing is a true copy of the resolutions so adopted; that such resolutions are still in full force and effect an <sic> unrevoked as of this date; and that such resolutions do not violate any charter or bylaw provision of this Company. IN WITNESS WHEREOF the undersigned has set his/her hand on the ____day of ____, yr ____.
>
> _____
> Secretary Signature

(Doc. 13, ¶ 82). Plaintiffs go on to allege that CLS Capital Group, Inc. had no resolutions and was "not a legitimate lender." (*Id.*, ¶¶ 83-87). The only tie to Fifth Third: "Having a bank account at Fifth Third gave the appearance that CLS Capital Group Inc was in business when it

8

was not." (*Id*., ¶ 88). That essentially mirrors Plaintiffs' purported false statement # 4 ("Wiring ability of a fake business which was misrepresented as legit."). (Doc. 41, PageID 618).

Even assuming that's all true, what is the specific false statement from Fifth Third to any of the Plaintiffs in this case? Or what is any statement at all made by Fifth Third to them? Fifth Third had no relationship with these people and never interacted with them a single time. If they have a fraud or breach of contract claim against Fifth Third's customer, so be it. But there can be no fraud claim against Fifth Third absent a specific and particular (false) statement by Fifth Third to Plaintiffs. "Recklessness in letting a defunct corporation be named on a checking account" (Doc. 41, PageID 618) is not the same thing as an affirmative false statement required for fraud and negligent misrepresentation claims. *Kelly v. United States Bank Natl. Assn.*, No. 1:15-CV-01019, 2015 U.S. Dist. LEXIS 132734, *6 (S.D. Ohio Sept. 30, 2015) (dismissing fraud claim where plaintiff "did not identify any false statements U.S. Bank made to her with an intent to deceive her"); *Zakrajsek v. Mortg. Elec. Registration Sys.*, No. 1:16CV1085, 2017 U.S. Dist. LEXIS 127110, *16 (N.D. Ohio Aug. 10, 2017) ("[Plaintiff] does not identify the misrepresentations or promises, who made them nor when they were made. This claim utterly lacks the particularity required by Fed. R. Civ. P. 9(b).").

    **b.** <u>No Knowledge Alleged</u>

Even if Plaintiffs had alleged that Fifth Third made any false statements to them, Plaintiffs' misrepresentation claims still fail because they do not allege Fifth Third knew these supposed statements were false. *Bd. of Trs. v. Bright St., LLC*, No. 3:16-cv-481, 2018 U.S. Dist. LEXIS 162031, **7-8 (S.D. Ohio Sept. 21, 2018), citing *Burr v. Bd. of County Comm'rs*, 23 Ohio St.3d 69, 491 N.E.2d 1101 (1986) (fraud requires knowledge of the falsity). At most, Plaintiffs appear unhappy that a Fifth Third customer had a checking account, which purportedly

9

allowed that customer to perpetuate a fraud (curiously in spite of Plaintiffs mailing said customer two checks for deposit). (Doc. 41, PageID 618 ("fake business which was misrepresented as legit")). But there are no allegations suggesting that Fifth Third should have had any reason to believe this company was not "legit," as Plaintiffs say. In fact, the Ohio Secretary of State's website shows CLS Capital Group, Inc. as an "active" entity, and the whole crux of this case is that CLS Capital Group, Inc. was depositing $75,000 into its checking account. There can be no plausible inference, then, that Fifth Third "knew" that CLS was not a going concern.

Plaintiffs' response to this is simply, if Fifth Third's current and former employees "had known and were involved in the fraudulent transactions then he or she is liable for helping the man commit his crimes." (Doc. 41, PageID 623). Maybe so, *if* that had an inkling of truth to it – which it does not. Dispositively, there are absolutely no allegations to that effect in the Amended Complaint, i.e., that Fifth Third's employees were somehow involved in these "fraudulent transactions." They weren't, and Plaintiffs don't allege it anyway. In fact, Plaintiffs later write, "If discovery shows that [any of Fifth Third's employees] was in cahoots with Reynaldo Uballe, Jr., Plaintiffs will amend to add a claim of civil conspiracy." (Doc. 41, PageID 624). Plaintiffs have no evidence to support that desperation heave; the discovery process is not a license for hoping some helpful facts will come out later. There must be sufficient factual allegations first. There are none here. *E.g.*, *Moore v. Lenderlive Network, Inc.*, No. 14-cv-11324, 2015 U.S. Dist. LEXIS 13271, *12 (E.D. Mich. Jan. 13, 2015) ("Moreover, discovery is not a license for a fishing expedition wherein the plaintiff may attempt to uncover new claims. To the contrary, because Plaintiff's Proposed First Amended Complaint is not facially plausible, the doors of discovery on this issue must remain locked.").

    **c.** <u>No Reliance Alleged</u>

Finally, Plaintiffs do not plead any facts sufficient to make their reliance on whatever Fifth Third represented to them (nothing at all) justifiable. *Bright St., LLC*, 2018 U.S. Dist. LEXIS 162031 at **7-8. Plaintiffs entered into a $10 million loan deal with a Fifth Third customer. (Doc. 13, ¶¶ 30-33). They "obtained confirmation from an attorney that he had done business with the corporation [Fifth Third's customer] for years." (*Id*., ¶ 31; Doc. 41, PageID 619). "In addition," Plaintiffs "had their own attorney handle this transaction and research regarding prior handling of escrow funds for CLS Capital Group Inc" (Doc. 41, PageID 620), apparently for the express purpose of "guard[ing] against fraud." (*Id*. at PageID 612).

And yet, despite all this supposed due diligence, Plaintiffs blame Fifth Third – a bank with whom it had zero relationship or interaction – for "fail[ing] to request any verification from the Delaware Secretary of State" that its customer was current on its licensure in its home state, information which Plaintiffs now pejoratively say "could have been discovered . . . online by paying $10." (*Id*.; *see also id*. at PageID 619). Simply put, it cannot have been justifiable for Plaintiffs to "rely" on a third-party bank to ensure that the party with whom they were transacting an eight-figure deal was "legit." If not their attorneys supposedly representing them in this deal, that due diligence should have been done by Plaintiffs themselves. Plaintiffs offer no explanation for why they couldn't make the same ten dollar payment to the Delaware Secretary of State which they ascribe to Fifth Third years after the fact.

For any of these three independent reasons – no false statement, no knowledge of a false statement, and no justifiable reliance – the Court should dismiss Counts Eight through Ten.

    **D.    The Public Policy Claim: This is not an independent claim for relief, and the Court should follow precedent.**

Plaintiffs' Sixth Claim is "Public Policy." (Doc. 13, ¶¶ 146-148). As Fifth Third noted in its Motion, that is not a cause of action at all. Plaintiffs do not respond to that point. And in

11

any case, to the extent Plaintiffs argue for this Court to depart from prior precedent holding a bank owes no duty to non-customers, the Court should not do so. To repeat, the law here is well-documented and established; to Fifth Third's knowledge, every court to have considered the question in Ohio and the Sixth Circuit has reaffirmed that banks do not owe any duties to parties who are not customers or accountholders. (*See* Doc. 40, PageID 593).

As espoused by courts elsewhere around the country, there is good reason for this precedent. *Midwest Feeders, Inc.*, 2017 U.S. Dist. LEXIS 6825 at *13 ("The banking industry handles a tremendous volume of transactions which involve small, as well as large, sums of money . . . To require the bank to investigate the underlying transaction which led to issuance of the instrument or to permit a third person to challenge a depositor's ownership would result in an unreasonable burden upon, and disruption of, regular and normal banking transactions."). All the more so in this case, where the Ohio Secretary of State's website displayed Fifth Third's accountholder as an active entity in good standing. (*See* Doc. 40, PageID 599). So what Plaintiffs advocate, then, is that when an Ohio bank's customer presents a check for deposit into its account, the bank must: (1) research the customer's current registration status in Ohio, (2) disregard if its customer's Ohio status is "active," (3) go further to its customer's home state of incorporation and pay to verify its standing, and (4) refuse the check for deposit if the bank is not satisfied that its customer is active on its licensure in that foreign state. Indeed Plaintiffs are very clear that this is what they think modern banking should entail:

> A bank is required to do more than a business to determine if a corporation is legit. It must look at each document filed in Ohio by the entity to register to do business to see if anything has changed on a notarized document and if any pages are missing from the filing. When pages are missing, they must inquire further. When the notarization page looks cut and pasted, the bank must inquire further. When the Ohio Secretary of State records show that it is a "foreign" [*sic*], it must go to the records of the Secretary of State in the entity's home state. Here, CLS Capital Group Inc was shut down in 2012 for failure to pay franchisee fees. This

> information could have been discovered by the bank online by paying $10 at the Delaware Secretary of State website.

(Doc. 41, PageID 619). For good reason, the law does not burden banks to go to these lengths every time one of its customers presents a valid check for deposit.

Therefore, to the extent "Public Policy" is itself a claim for relief, the Court should decline Plaintiffs' invitation to depart from precedent in Ohio and the Sixth Circuit by ascribing a newfound duty on banks to non-customers. Count Six should be dismissed.

### E. Conclusion

For the foregoing reasons, as well as those more fully set forth in Fifth Third's principal Motion (Doc. 40), the Court should dismiss Plaintiffs' Amended Complaint (Doc. 13) against Defendants Fifth Third Bancorp, Fifth Third Bank, National Association, Brian Reid, Julie Kristenak, and Blake Williams (as well as non-entities "Fifth Third Bank, an Ohio banking corporation" and "Fifth Third Bank, Northwestern Ohio, NA Toledo").

Respectfully submitted,

*/s/ Andrew B. Cassady*
Harry W. Cappel (0066513)
Andrew B. Cassady (0092413)
DINSMORE & SHOHL LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
P: (513) 977-8200
harry.cappel@dinsmore.com
andrew.cassady@dinsmore.com

*Counsel for Defendants*
*Fifth Third Bancorp, Fifth Third Bank,*
*National Association, Brian Reid, Julie*
*Kristenak, and Blake Williams*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of June, 2022, the foregoing document was electronically filed with the Clerk of Courts for the U.S.D.C. for the Southern District of Ohio via the Court's CM/ECF system, which system will notify all parties of the filing of same. The parties may access this filing through the Court's system.

*/s/ Andrew B. Cassady (0092413)*
Andrew B. Cassady