## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

PIERRE INVESTMENTS, INC., *et al.*,    :      Case No. 1:22-cv-155
                       :
        Plaintiffs,         :      Judge Timothy S. Black
                       :
vs.                       :
                       :
FIFTH THIRD BANCORP, *et al.*,    :
                       :
        Defendants.      :

## ORDER RESOLVING PENDING MOTIONS
### (Docs. 16, 19, 23, 29, 34, 40, 51)

This civil case is before the Court on seven different motions by three different parties. Given the number of motions, the Court first discusses the background of the action, followed by an analysis of each motion.

## I.    BACKGROUND

### A.    Procedural Background

Plaintiff Pierre Investments, Inc. ("Pierre Investments") initiated this action against "Fifth Third Bank, an Ohio banking corporation," on November 13, 2021 by filing its complaint in the Southern District of Ohio, Eastern Division in Columbus. "Fifth Third Bancorp" accepted service and responded with a motion to transfer venue and a motion to dismiss. (Docs. 4, 5). Pierre Investments did not respond to the substance of either motion. Instead, Pierre Investments moved to strike both filings, arguing the motions were filed by a non-party: "Fifth Third Bancorp." (Doc. 8). Pierre Investments also moved for default judgment against "Fifth Third Bank, an Ohio banking

corporation," claiming that entity had failed to timely respond to the complaint. But, three days after moving to strike and moving for default judgment, the operative amended complaint was filed. (Doc. 13).

The operative amended complaint is brought by Pierre Investments, Inc.; Pierre Investments, Inc. d/b/a Gehard Luxury Homes; and Ken Gazian (collectively, "Plaintiffs"). The Amended Complaint is brought against Frank LaRose, in his official capacity as the Ohio Secretary of State (the "Ohio SOS") and Jefferey Bullock, in his official capacity as the Delaware Secretary of State (the "Delaware SOS").[1] The amended complaint also asserts claims against multiple Fifth Third persons and entities: "Fifth Third Bank, an Ohio banking corporation," "Fifth Third Bank, Northwestern Ohio, NA Toledo," "Fifth Third Bank, National Association," "**Fifth Third Bancorp**," and Brian Reid, Julie Kreistenak, and Employee #957851, who are all employees at a Fifth Third branch in Toledo, Ohio (collectively, the "Fifth Third Defendants").[2]

Following the amended complaint, the Eastern Division in Columbus denied without prejudice the motion for default judgment, denied the motion to strike, and granted the motion to transfer venue. Specifically, the Eastern Division in Columbus granted transfer to this division because Plaintiffs named "Fifth Third Bancorp" as a defendant in the amended complaint and did not dispute the substantive arguments in

---

[1] As discussed *infra*, the claims against the Ohio SOS are dismissed without prejudice. See Section II(F). Also as discussed *infra*, as of the date of this Order, the Delaware SOS has not yet been served, thus, has not yet appeared in the case. *See* Section II(G).

[2] As discussed *infra*, "Fifth Third Bank, an Ohio banking corporation" and "Fifth Third Bank, Northwestern Ohio, NA Toledo" are no longer defendants in this action. *See* Section II(B).

support of transfer. (Doc. 15). After the case was transferred, motion practice ensued, leading to the seven motions currently pending for the Court's review.

### B. Facts <u>AS ALLEGED</u> By Plaintiffs[3]

Non-parties CLS Capital Group, Inc. and Reynaldo Uballe, Jr. (collectively, "CLS Capital") have or have held bank account(s) with the Fifth Third Defendants. Sometime in 2018, Pierre Investments entered into an agreement with CLS Capital. (*Id.* at ¶ 29). Pursuant to the agreement, Pierre Investments would tender $75,000 to CLS Capital for a $10 million loan commitment. (*Id.* at ¶ 30). Pierre Investments intended to use the loan "for development and construction of residential homes in Texas." (*Id.*)

Pierre Investments, having been scammed in the past, confirmed with CLS Capital's counsel that CLS Capital was a legitimate business and had the ability to provide a $10 million loan. (*Id.* at ¶ 31). Pierre Investments also received assurances that CLS Capital would hold the $75,000 in an escrow account. (*Id.* at ¶ 35). Pierre Investments then mailed two cashier's checks, totaling $75,000, to CLS Capital. (*Id.* at ¶ 36). According to Plaintiffs, CLS Capital failed to hold the funds in escrow, Uballe cashed the checks and/or deposited the checks into a Fifth Third bank account, and Pierre Investments are now the victims of financial fraud. (*Id.* at ¶¶ 36-37).

Upon discovering the purported fraud, Pierre Investments sued CLS Capital for breach of contract in the Lucas County Court of Common Pleas. *See Pierre Investments,*

---

[3] One of the motions currently pending is the Fifth Third Defendants' motion to dismiss for failure to state a claim. (Doc. 40). Accordingly, the Court details these facts <u>as alleged</u> by Plaintiffs in the operative amended complaint. (Doc. 13).

*Inv. V. CLS Capital Group, Inc.*, No. CI-2019-4258 (Lucas Cty. C.P.). CLS Capital counter-sued for breach of contract. After a bench trial, the state-court judge found that neither party was successful on their claim. That decision is currently pending on appeal. *Pierre Investments, Inv. V. CLS Capital Group, Inc.*, No. CL-21-1229 (Ohio 6th Dist. Ct. App., Lucas Cty.).

Plaintiffs then initiated the present action against the Ohio SOS, the Delaware SOS, and the Fifth Third Defendants. According to Plaintiffs, the Ohio SOS and the Delaware SOS failed to verify and keep updated records of active corporations, since CLS Capital had been out of business since 2012. (Doc. 13 at ¶¶ 21-28). Additionally, the Fifth Third Defendants failed to screen its customers; allowed CLS Capital, a purportedly fake company, to open a bank account and hold themselves out to be "a legitimate, valid and verified lender;" and failed to conduct due diligence on its customers. (*See generally*, *id.*)

Arising from this conduct, Plaintiffs assert 14 causes of action against the Ohio SOS, the Delaware SOS, and the Fifth Third Defendants, discussed *infra.* Plaintiffs allege that, because of Defendants' conduct, Pierre Investments was unable to receive a legitimate loan and develop the residential community. Plaintiffs seek $45 million as lost profits for not being able to develop the community.

## II.    LAW & ANALYSIS

### A.    Motion to Substitute Party Employee #957851 (Doc. 34)

To clarify the parties in this case, the Court first resolves Plaintiffs' motion to substitute party employee #957851. (Doc. 34). Specifically, Plaintiffs move to substitute

Blake Williams as the defendant identified as "Employee #957851," a Fifth Third employee, in the amended complaint.  (Doc. 34).  No party has opposed the motion. Additionally, Blake Williams joins the Fifth Third Defendants' motion to dismiss, discussed *infra*.  Accordingly, the motion (Doc. 34) is **GRANTED**.  The Clerk shall substitute Blake Williams for "Employee #957851."

### B.  Motion to Substitute Party Fifth Third Bank, National Association (Doc. 51)

To continue clarifying the parties in this case, the Court next resolves Plaintiffs' motion to substitute party "Fifth Third Bank, National Association" for named defendants "Fifth Third Bank, Northwestern Ohio, NA Toledo" and "Fifth Third Bank, an Ohio banking corporation" filed on October 10, 2022.  (Doc. 51).  Plaintiffs claim that the two entities are misnomers and that they were unable to determine the proper name for these defendants until the filing of the motion due to changes in the bank's official filings with secretaries of state.[4]

As an initial matter, since the beginning of this action, Plaintiffs were informed by Fifth Third's counsel that the only active Fifth Third entities are "Fifth Third Bancorp" (an Ohio corporation) and "Fifth Third Bank, National Association" (a Delaware corporation).  (*E.g.*, Doc. 14).  Yet, Plaintiffs continued to pursue "Fifth Third Bank, Northwestern Ohio, NA Toledo" and "Fifth Third Bank, an Ohio banking corporation" as

---

[4] Citing all Ohio state-court cases, Plaintiffs move to substitute pursuant to Ohio Rule of Civil Procedure 15(C).  Although the Court applies state substantive law to Plaintiffs' state-law claims, the Court applies the federal law to procedures, such as amending a complaint to correct a misnomer.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

defendants in the action. Now, nearly seven months since the amended complaint, Plaintiffs finally admit that the only proper Fifth Third defendants are "Fifth Third Bancorp" and "Fifth Third Bank, National Association."

Nevertheless, moving to Plaintiffs' request, the motion to substitute is not well-taken. Plaintiffs move to substitute "Fifth Third Bank, National Association" for "Fifth Third Bank, Northwestern Ohio, NA Toledo" and "Fifth Third Bank, an Ohio banking corporation." (Doc. 51). But, Plaintiffs have already named "Fifth Third Bank, National Association" as a defendant. (Doc. 13). There is no party to substitute or misnomer to correct. Accordingly, Plaintiffs' motion to substitute (Doc. 51) is **DENIED**.

Additionally, the Court **DROPS** "Fifth Third Bank, Northwestern Ohio, NA Toledo" and "Fifth Third Bank, an Ohio banking corporation" from the action. *See* Fed. R. Civ. P. 21 ("on its own, the court may at any time, on just terms, add or drop a party"). Moving forward, the "Fifth Third Defendants" means "Fifth Third Bancorp," "Fifth Third Bank, National Association," and Fifth Third employees Brian Reid, Julie Kreistenak, and Blake Williams.

### C. Motion for Reconsideration (Doc. 19)

Having now established the correct parties, the Court considers Plaintiffs' motion for reconsideration (Doc. 19) of the Order denying Plaintiffs' motion to strike and granting the motion to transfer venue (Doc. 15), and the parties' responsive memoranda. (Doc. 25, 28).

### 1. *Standard of Review*

Under Federal Rule of Civil Procedure 54(b), courts have the authority to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment. *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). Generally, "courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Id.* A motion for reconsideration, however, "cannot be used to raise legal arguments that could have been raised before the Court issued its decision[.]" *Powers v. United States*, 2019 WL 1397239, at *2 (E.D. Mich. Mar. 28, 2019); *Triplett-Fazzone v. City of Columbus Div. of Police*, No. 2:12-CV-00331, 2013 WL 4010573, at *3 (S.D. Ohio Aug. 6, 2013), aff'd (June 30, 2014) (citations omitted) (motions for reconsideration "cannot be used to raise new arguments).

### 2. *Analysis*

Plaintiffs argue that the case should not have been transferred because: (1) it is more convenient for counsel to litigate in Columbus, instead of traveling to Cincinnati; (2) it is more convenient for Plaintiffs, Texas residents, to fly into Columbus instead of Cincinnati; (3) discovery will be in Columbus because laws are made in Columbus; and (4) the transferor court should not have considered the motion to change venue because it was filed by a nonparty, "Fifth Third Bancorp." (Docs. 19, 28). The Fifth Third Defendants oppose the request. (Doc. 25).

As an initial matter, other than the fourth argument, Plaintiffs failed to raise any of these issues to the transferor court. As a secondary matter, although Plaintiffs cite to Rule 54, Plaintiffs do not argue any of the three reasons which would warrant reconsideration. Nevertheless, very liberally construing the motion, since there are no changes in controlling law or new evidence, the Court will analyze whether the order transferring the action should be reconsidered to prevent manifest injustice or clear error.

First, there is no manifest injustice. The "inconveniences" of travel cited by Plaintiffs are squabbles; there is no real discernable difference between flying into Cincinnati or Columbus. To the extent there is discovery physically located in Columbus, Plaintiffs' counsel is in the area and can easily retrieve it. To the extent the transferor court erred by considering a motion by a nonparty, Plaintiffs mooted that argument by adding the party to the lawsuit via the amended complaint. Moreover, Plaintiffs are not prejudiced by litigating in the Western Division in Cincinnati—they have fully embraced motion practice in this venue.

Second, there is no clear error. The original complaint was brought against "Fifth Third Bank, an Ohio Banking Corporation" only, and conceded that "Fifth Third is an Ohio banking corporation with offices throughout Ohio, **with its principal place of business in Cincinnati, Ohio**." (Doc. 1 at ¶ 2 (emphasis added)). The amended complaint similarly conceded the same.[5] (Doc. 13 at ¶¶ 12, 15). Pursuant to Local

---

[5] Plaintiffs tried to bolster their request for a Columbus venue by adding the Ohio SOS as a Defendant. Plaintiffs, however, have since moved to dismiss the Ohio SOS. *See* Section II(F), *infra*.

Rules, "an action against a defendant or defendants resident in this District shall be filed at the location of Court that serves a county in which at least one defendant resides." S.D. Ohio Local Rule 82.1(c). Moreover, "[a] corporation that is deemed to reside in this District pursuant to 28 U.S.C. § 1391(c) is further deemed to reside in that county in which its principal place of business within the District is located, or, if none, in that county with which it has the most significant contacts." S.D. Ohio Local Rule 82.1(d). Following these rules, the original complaint should have been filed in this Western Division in Cincinnati. Transfer was entirely proper.

Accordingly, the motion for reconsideration is **DENIED**.

### D. Fifth Third Defendants' Motion for Extension of Time (Doc. 16)

Having clarified the parties in the case and found venue proper in this Division, the Court moves to the Fifth Third Defendants' response to the amended complaint.

First, the Fifth Third Defendants moved for an extension of time to respond to the amended complaint until May 25, 2022. (Doc. 16). The motion was originally presented as unopposed (Doc. 16), then clarified as opposed (Doc. 17). In short, different Fifth Third Defendants were served on different days, so the Fifth Third Defendants sought to extend deadlines so they would all have the same deadline. (Doc. 16). The earliest answer date was April 4, 2022 and the latest answer date was May 25, 2022. Although this appeared to be a reasonable request, especially given Plaintiffs' motion for reconsideration of the transfer order, discussed *supra*, Plaintiffs opposed. (Doc. 20). Plaintiffs, however, seemed amenable to a 21-day extension of the earliest answer date. (Doc. 20 at 4-5). Thus, the Fifth Third Defendants responded to the amended complaint

by filing a motion to dismiss on April 25, 2022 (21-days after the earliest answer date). (Doc. 40).  Plaintiffs have not complained about the timing of that filing.

Accordingly, to the extent required and for good cause shown, the motion for extension of time (Doc. 16) is **GRANTED** and the Court considers the motion to dismiss as a timely response for all Fifth Third Defendants to the amended complaint.

### E.      Fifth Third Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (Doc. 40)

Next is the Fifth Third Defendants' motion to dismiss all counts for failure to state a claim (Doc. 40), and the parties' responsive memoranda (Docs. 41, 46).[6]

#### 1.      *Standard of Review*

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted."  To show grounds for relief, Fed. R. Civ. P. 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,' ... it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).  Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (citing *Twombly*, 550 U.S. at 555).

---

[6] To the motion to dismiss, the Fifth Third Defendants attach a letter.  (Doc. 40-1).  Plaintiffs oppose the use of that letter for purposes of the motion to dismiss.  (Doc. 41).  It is not necessary to consider the letter when resolving the motion to dismiss, and the Court does not consider it.

In fact, in determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265 (1986) ). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.*

Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. A claim is plausible where a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and the case shall be dismissed. *Id.* (citing Fed. Rule Civ. P. 8(a)(2)).

Additionally, parties have an obligation to defend their claims against a motion to dismiss. *Doe v. Bredesen*, 507 F.3d 998, 1007 (6th Cir. 2007). Where a party fails to support its claim in a brief opposing a motion to dismiss, district courts are free to treat those claims as abandoned and dismiss them. *Id.*, *see also Huge v. General Motors Corp.*, 62 Fed. App'x. 77, 79 (6th Cir. 2003) (upholding district court's refusal to consider a claim that plaintiff failed to defend on motion to dismiss); *Meredith v. Allen Cty. War Memorial Hosp. Comm'n*, 397 F.2d 33, 34 n. 2 (6th Cir. 1968) (same); *ARJN #3 v. Cooper*, 517 F. Supp. 3d 732, 750 (M.D. Tenn. 2021) ("Where a party fails to respond

to an argument in a motion to dismiss the Court assumes he concedes this point and abandons the claim.").

### 2. *Analysis*

#### i. <u>Negligence Claims (Counts I, II, VII, XIII)</u>

In Counts I (common law negligence), II (respondeat superior), VII (agency and vicarious liability), and XIII (negligence), Plaintiffs assert various versions of negligence claims against the Fifth Third Defendants. The Fifth Third Defendants argue that Plaintiffs cannot pursue these claims because: (1) Plaintiffs do not hold accounts with the Fifth Third Defendants, so the Fifth Third Defendants owe no duty to Plaintiffs; and (2) Plaintiffs' losses are purely economic. (Doc. 40 at 5-7).

Under Ohio law, "[i]n order to establish an actionable claim of negligence, a plaintiff must show the existence of a duty, a breach of that duty, and an injury that was proximately caused by the breach." *Rieger v. Giant Eagle, Inc.*, 2019-Ohio-3745, 138 N.E.3d 1121, 1125 (Ohio 2019). "Ohio follows the prevailing rule that a bank owes no duty to a person who is neither a customer nor an account-holder." *Driessen v. Woodforest Nat. Bank*, 940 F.Supp.2d 584, 590 (S.D. Ohio 2013); *see also SFS Check, LLC v. First Bank of Delaware*, 774 F.3d 351, 357 (6th Cir. 2014) ("The almost-universal law in this country is that banks owe a duty of care only to their own customers.").

In the amended complaint, Plaintiffs concede that there was no relationship between Plaintiffs and the Fifth Third Defendants because Plaintiffs were neither a customer nor accountholder with Fifth Third. (Doc. 13 at ¶ 148). Moreover, Plaintiffs do not respond to the Fifth Third Defendants' arguments seeking dismissal of the negligence

claims, instead generally stating that "there are sufficient factual allegations" to survive a motion to dismiss.  (Doc. 41 at 5).  By failing to defend the negligence claims, Plaintiffs have abandoned these claims.[7]

Accordingly, the Fifth Third Defendants' motion to dismiss Counts I, II, VII, and XIII is **GRANTED**.  Counts I, II, VII, and XIII as alleged against the Fifth Third Defendants are **DISMISSED with prejudice**.

ii.    Federal Claims (Counts III, IV, V)

In Count III, Plaintiffs allege that the Fifth Third Defendants "violated the rules of the Patriot Act/Anti-Money Laundering Act, Anti-Terrorist Funding Act, when [they] failed to verify the existence of CLS Capital Group Inc in its home state of Delaware." (Doc. 13 at ¶ 111).  In Count IV, Plaintiffs allege that the Fifth Third Defendants "violated the rules of the Patriot Act Public Law 107-56 by failing to use the tools meant to intercept and obstruct terrorism mentioned in the US Patriot Act of 2001."  (Doc. 13 at ¶ 117).  In Count V, Plaintiffs allege that the Fifth Third Defendants "violated the rules of the Federal Reserve [and] violated the rules of the Office of the Comptroller of the Currency."  (Doc. 13 at ¶¶ 131-137).  Plaintiffs allege that by violating these rules and regulations, the Fifth Third Defendants breached a duty owed to Plaintiffs.

---

[7] Plaintiffs argue: "A bank is required to do more than a business to determine if a corporation is legit." (Doc. 41 at 8).  Like most of Plaintiffs' response to the motion to dismiss, Plaintiffs fail to support this statement or their claims with citations or legal authority.  And, to the extent Plaintiffs are claiming a heightened duty for banks to non-customers, the Court discusses that request *infra*.  *See* Section II(E)(2)(v).

The Fifth Third Defendants argue that these claims must be dismissed because there are no private causes of action under any of these statutes. The Fifth Third Defendants also argue that Plaintiffs fail to state what Federal Reserve or OCC rules were violated. Plaintiffs do not respond to these arguments or attempt to clarify their claims. Moreover, to the extent the Fifth Third Defendants violated the federal laws cited, Plaintiffs cannot sustain these causes of action against the Fifth Third Defendants. *E.g.*, *Belle Meade Title & Escrow Corp. v. Fifth Third Bank*, 282 F. Supp. 3d 1033, 1040 (M.D. Tenn. 2017) (collecting cases) ("the federal statutes and regulations upon which the plaintiff relies (the Patriot Act, Anti–Money Laundering Act and Bank Secrecy Act) do not create a common law duty on the part of banks to non-customers").

Accordingly, the motion to dismiss Counts III, IX, and X is **GRANTED**. Counts III, IX, and X as alleged against the Fifth Third Defendants are **DISMISSED with prejudice**.

### iii.  Fraud Claims (Counts VIII, IX)

Next are Plaintiffs' fraud claims: Count VIII (fraudulent misrepresentation) and Count IX (fraudulent inducement). The Fifth Third Defendants argue that these claims should be dismissed because Plaintiffs failed to plead with particularity any statements made by the Fifth Third Defendants, knowledge, and justifiable reliance. In response, Plaintiffs contend that:

> The specific statements made by defendants include: 1) Fifth Third Northwestern was in business in 2016 (even though it was closed in 2014) according to billing statements sent out after it was out of business. (*Amended Complaint*, Exhibit 1, p. 5); 2) Use of a P.O. Box after the NW bank was out of business;

> (*Amended Complaint*, Exhibit 1, p. 5); 3) use of Fake QR Codes on documents provided to Plaintiffs to induce them to believe that there was a Fifth Third Account handling escrow funds legitimately (*Amended Complaint*, Exhibit 1, p. 7); 4) Wiring ability of a fake business which was misrepresented as legit. The bank statements which were presented to Plaintiffs as proof that money is held in escrow by a defunct corporation is a false statement.

(Doc. 41 at 7). Plaintiffs claim that these statements induced it into entering into an ultimately fraudulent business transaction with CLS Capital.

A claim of fraudulent misrepresentation arises when a party is induced to enter into an agreement through fraud or misrepresentation. *ABM Farms, Inc. v. Woods*, 692 N.E.2d 574 (Ohio 1998). "Fraudulent inducement involves a general duty to avoid wrongful conduct that induces a party to enter into a contract." *Aero Fulfillment Servs. Corp. v. Oracle Corp.*, 186 F. Supp. 3d 764, 774 (S.D. Ohio 2016) (citation omitted). The elements of a claim of fraud are as follows: (1) a representation, or where there is a duty to disclose, concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying on it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance. *Capital One Bank (USA), NA v. Reese*, 2015-Ohio-4023, at ¶ 64, 2015 WL 5728642 (Ohio Ct. App. 2015).

"In alleging fraud or mistake a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "At a minimum, [the

plaintiff] must allege the time, place and contents of the misrepresentations upon which [it] relied." *Frank v. Dana Corp.*, 547 F.3d 564 (6th Cir. 2008). "Malice, intent, knowledge, and other condition of mind of a person may be averred generally." *Minger v. Green*, 239 F.3d 793, 800 (6th Cir. 2001). The rationale of Rule 9(b) is (1) to alert parties to the particulars of the allegations against them so they can intelligently respond; (2) to prevent "fishing expeditions;" (3) to protect reputations against fraud allegations; and (4) to whittle down potentially wide-ranging discovery to only relevant matters. *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 466-67 (6th Cir. 2011). "The Sixth Circuit has explained that so long as a party pleads sufficient detail—in terms of time, place and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud—to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met." *Bd. of Trustees of IBEW Fund Loc. No. 82 Pension Fund v. Bright St., LLC*, No. 3:16-CV-481, 2018 WL 4560828, at *3 (S.D. Ohio Sept. 21, 2018) (cleaned up).

The amended complaint fails to state fraud claims against the Fifth Third Defendants. There are no allegations concerning what false representations any of the Fifth Third Defendant made to Plaintiffs.[8] Although Plaintiffs specifically point to various documents which they contend were false, there are no allegations that a Fifth Third Defendant provided these documents or made these representations to Plaintiffs.

---

[8] As discussed, *supra*, the Fifth Third Defendants owe no duty to Plaintiffs so the fraud claims cannot rest on concealment of fact. In any event, Plaintiffs make no allegations that the Fifth Third Defendants had a duty to disclose information and that the Fifth Third Defendants concealed information.

Instead, viewing the allegations of the complaint in light most favorable to Plaintiffs, these documents were provided by CLS Capital (or related entities) to Plaintiffs prior to Plaintiffs sending cashier's checks to CLS Capital in 2018 for the loan commitment, or, alternatively, the documents were provided to Plaintiffs during discovery in the state court action. As alleged by Plaintiffs, they had no communication with the Fifth Third Defendants until they discovered CLS Capital's alleged fraud and notified the Fifth Third Defendants of the state court lawsuit. (*E.g.*, Doc. 13-4).

Perhaps recognizing that the claims are not pled with particularly, Plaintiffs argue that discovery will establish their fraud claims. However, this is the exact type of "fishing expedition" that Rule 9(b) protects against. Accordingly, the motion to dismiss Counts VIII and IX is **GRANTED**. Counts VIII and IX as alleged against the Fifth Third Defendants are **DISMISSED with prejudice**.

iv.      Negligent Misrepresentation (Count X)

In Count X, Plaintiffs assert a negligent misrepresentation claim. Both the Fifth Third Defendants and Plaintiffs argue this claim with the fraud claims.[9]

---

[9] The Fifth Third Defendants argue that heightened pleading applies to this claim. Plaintiffs do not respond to that argument. "When a party brings both fraud and negligent misrepresentation claims but fails to plead an independent basis of liability for each of the claims, courts will apply Rule 9(b)'s standard to both claims." *Rheinfrank v. Abbot Lab'ys*, No. 1:13-CV-144, 2013 WL 4067826, at *2 (S.D. Ohio Aug. 12, 2013) (citing *In re Nat'l Century Fin. Enters., Inc. Inv. Litig.*, 504 F.Supp.2d 287, 322 (S.D. Ohio 2007)). However, under Ohio law, negligent misrepresentation is an independent cause of action, so when it is a distinct claim from the fraud claim, courts apply Rule 8(a) pleading standards. *Id.* Here, it is unnecessary to decide what pleading standard applies because, even under the more liberal Rule 8(a) standard, Plaintiffs fail to state a claim.

17

The elements of negligent misrepresentation are as follows: (1) the defendant supplied false information; (2) in the course of his business, profession, or employment, or any other transaction for which he has a pecuniary interest; (3) that caused pecuniary loss to the plaintiff; (4) justifiable reliance; and (5) the defendant failed to exercise reasonable care or competence in obtaining or communicating the information at issue. *Delman v. City of Cleveland Heights*, 534 N.E.2d 835, 838 (Ohio 1989).

To plead a negligent misrepresentation claim, Plaintiffs must allege that the Fifth Third Defendants affirmatively supplied false information to Plaintiffs.  Like the fraud claims, Plaintiffs allege no false information that was affirmatively supplied by the Fifth Third Defendants to Plaintiffs.

Accordingly, the motion to dismiss Count X is **GRANTED**.  Count X as alleged against the Fifth Third Defendants is **DISMISSED with prejudice**.

v.      <u>Public Policy (Count VI)</u>

In Count VI, Plaintiffs bring a claim titled "Public Policy."  (Doc. 13 at 26-31.) This claim seeks a Court order, based on "public policy," which would require "all banks" to have a process to detect defunct or fraudulent corporations, and report those findings to the public.  (Doc. 13 at 26-27).  The Fifth Third Defendants argue this claim should be dismissed because it is simply not a claim.  (Doc. 40 at 15).  Plaintiffs respond: "Count 6 (Public Policy) refers to the need to close the loophole…As the laws are now, there is a loophole that allows banks to open up fraudulent bank accounts without oversight by the Federal Reserve or the OCC."  (Doc. 41 at 10, 13).

Count VI fails to state a cognizable claim.  The gist of Plaintiffs' entire amended complaint is encompassed by this claim.  The gist of Plaintiffs' amended complaint is to hold the Fifth Third Defendants responsible for their own failure to conduct due diligence on CLS Capital before issuing two cashier's check, totaling $75,000, in exchange for a $10 million loan commitment from CLS Capital.[10]  By arguing that the Fifth Third Defendants should have conducted more due diligence, Plaintiffs seek to expand a bank's duty of care to non-customers or accountholders, which is something courts have explicitly declined to do.  *See SFS Check*, 774 F.3d at 357-58 ("We decline to adopt a new rule that being the victim in a fraudulent scheme involving an imposter bank account causes the victim to become a customer of the bank.").[11]

Accordingly, the motion to dismiss Count VI is **GRANTED**.  Count VI as alleged against the Fifth Third Defendants is **DISMISSED with prejudice.**

---

[10] For example, Plaintiffs argue that the Fifth Third Defendants "could have" discovered that CLS Capital was an inactive corporation before allowing CLS Capital to open a bank account by "paying $10 at the Delaware Secretary of State website."  (Doc. 41 at 8).  Logic dictates that Plaintiffs could also have sought information from the Delaware SOS before engaging in a $10 million business transaction and sending cashier's checks to CLS Capital.  Of course, Plaintiffs allege that they conducted due diligence by confirming the legitimacy of CLS Capital with CLS Capital's counsel.  But, there are no allegations that any of the defendants in this case had anything to do with CLS Capital counsel's purportedly false representations.

[11] Moreover, when arguing for this requested relief, Plaintiffs seemingly admit that the Fifth Third Defendants have not violated any statutory or common laws.  (*E.g.*, Doc. 41 at 10 ("There is no oversight on the opening of bank accounts by fraudsters and by employees who want to make quota."); *id.* at 13 ("When one tries to open up a business checking account for a defunct corporation without principals, this is the kind of suspicious activity that one would think would be reported. Under the law as it is now, it does not have to be reported."); *id.* (As the laws are now, there is a loophole that allows banks to open up fraudulent bank accounts without oversight by the Federal Reserve or the OCC.")).

      vi.      <u>Remaining Claims (Counts XI, XII, XIV)</u>

After the filing of the Fifth Third Defendants' motion to dismiss, Plaintiffs filed a notice, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A), voluntarily dismissing <u>with prejudice</u> Counts XI, XII, and XIV against all defendants.  (Doc. 44).  Accordingly, the motion to dismiss Counts XI, XII, and XIV is **denied as moot**.

### F.    The Ohio SOS's Motion to Dismiss for Failure to State a Claim (Doc. 23) and Plaintiffs' Motion to Dismiss party-Frank LaRose (Doc. 29)

Having clarified the parties, established venue, and resolved Plaintiffs' amended complaint against the Fifth Third Defendant, the Ohio SOS and Delaware SOS remain.

The Ohio SOS moves to dismiss all claims based on lack of jurisdiction because of Eleventh Amendment immunity, or alternatively, for failure to state a claim.  (Doc. 23). Plaintiffs did not respond to the motion.  Instead, Plaintiffs filed a motion to dismiss the Ohio SOS, apparently conceding that Eleventh Amendment immunity applies and the Court cannot exercise jurisdiction over Plaintiffs' claims against the Ohio SOS.  (Doc. 29).  The Ohio SOS did not respond to Plaintiffs' motion.  Thus, both motions (Docs. 23, 29) are unopposed and generally seek the same relief.

Given the foregoing, the Ohio SOS's motion to dismiss (Doc. 23) is **GRANTED** to the extent it seeks dismissal for lack of jurisdiction.  Plaintiffs' motion to dismiss (Doc. 29) is similarly **GRANTED**.  All claims against the Ohio SOS are **DISMISSED without prejudice**.  *Ernst v. Rising*, 427 F.3d 351, 367 (6th Cir. 2005) ("dismissals for lack of jurisdiction should generally be made without prejudice").  The Clerk shall terminate the Ohio SOS from the docket.

### G.    Order to Show Cause as to the Delaware SOS

Having clarified the parties, established venue, resolved Plaintiffs' amended complaint against the Fifth Third Defendants, and dismissed without prejudice claims against the Ohio SOS, only one defendant remains: the Delaware SOS.

Pursuant to Federal Rule of Civil Procedure 4(m), a plaintiff has 90 days after the complaint is filed to serve a defendant.  If a defendant is not served, the court, on motion or on its own after notice, "must dismiss the action without prejudice against that defendant or order that service be made within a specific time." *Id*.  "But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id*.

The Court also has inherent authority to dismiss an action, or particular claims within an action, with or without prejudice, for failure to prosecute.  Fed. R. Civ. P. 41(b); *Link v. Wabash R. Co.*, 370 U.S. 626, 629–31 (1962).  "This measure is available to the district court as a tool to effect management of its docket and avoidance of unnecessary burdens on the tax-supported courts and opposing parties." *Knoll v. AT&T*, 176 F.3d 359, 363 (6th Cir. 1999).  "Rule 41(b) recognizes the power of the district court to enter a *sua sponte* order of dismissal." *Steward v. City of Jackson, Tenn.*, 8 F. App'x 294, 296 (6th Cir. 2001) (citing *Link*, 370 U.S. 626 at 630).

The amended complaint was filed March 21, 2022.  (Doc. 13).  On August 19, 2022, Plaintiffs requested an issuance of summons as to the Delaware SOS.  Plaintiffs' request was beyond the 90-days pursuant to Rule 4(m).  Plaintiffs did not request an

extension of time or show good cause.  Moreover, as of the date of this Order, there is no indication that the Delaware SOS has been served.

Accordingly, Plaintiffs are hereby **NOTIFIED** that the Court proposes to dismiss the claims against the Delaware SOS, due to Plaintiffs' failure to effect timely service of process.  Plaintiffs, therefore, are **ORDERED** to show cause, in a verified pleading filed with the Court, within **SEVEN DAYS** of the entry date of this Order, why the remaining claims against the Delaware SOS should not be dismissed without prejudice.

### III.    CONCLUSION

Based upon the foregoing:

1.    Plaintiffs' motion to substitute party (Doc. 34) is **GRANTED**.  The Clerk shall substitute Blake Williams for "Employee #957851" on the docket.

2.    Plaintiffs' motion to substitute party (Doc. 51) is **DENIED** because the party Plaintiffs seek to substitue is already a named defendant.  The Clerk shall **DROP** "Fifth Third Bank, an Ohio banking corporation" and "Fifth Third Bank, Northwestern Ohio, NA Toledo" as parties to the action.

3.    Pursuant to Plaintiffs' notice of voluntary dismissal (Doc. 44), Counts XI, XII, and XIV are **DISMISSED with prejudice** as to all defendants.

4.    The Fifth Third Defendants' motion for extension of time (Doc. 16) to respond to the amended complaint is **GRANTED**.

5.    Plaintiffs' motion for reconsideration (Doc. 19) is **DENIED**.

6.    The Fifth Third Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED AS MOOT IN PART**.  The motion is moot as to Count XI, XII, and XIV.  The motion granted as to all other counts.  Counts I-X and XIII are **DISMISSED with prejudice**.  The Clerk shall terminate the Fifth Third Defendants from the docket.

7.    Defendant Ohio Secretary of State's motion to dismiss (Doc. 23) and Plaintiffs' motion to dismiss the Ohio Secretary of State (Doc. 29) are **GRANTED**.  The claims against the Ohio Secretary of State are

**DISMISSED** <u>**without**</u> **prejudice**.  The Clerk shall terminate the Ohio Secretary of State from the docket.

8.  Plaintiffs **SHALL show cause**, **within seven (7) days** of this Order, why the claims against the only remaining defendant, the Delaware SOS, should not be dismissed without prejudice for failure to timely serve.

**IT IS SO ORDERED.**

Date:   10/11/2022

*s/Timothy S. Black*
Timothy S. Black
United States District Judge